

FILED

MAY 22 2017

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

E-FILING



**IN THE FEDERAL COURT OF THE UNITED STATES**
**IN AND FOR THE REPUBLIC OF CALIFORNIA**

| | |
|---|---|
| Eeon, a natural individual standing sui juris in his Natural Capacity, et al; Concetta Mcbride a natural woman standing sui juris in Her Natural Capacity, et al: and all other occupants, individuals as well as non-individuals, et al.<br><br>Plaintiff(s),<br><br>v.<br><br>Deutsche Bank, et al. in their private capacity; The Monterey COUNTY Superior Court, et al. in their nongovernmental capacities; the Monterey County Sheriff's department, et al- in their nongovernmental capacities.; The California legislature, et al.-in their nongovernmental capacities; doe's 1 through 2000, et al- each in their non-individual capacities<br><br>Defendant(s) | **Federal Court Civil Case Number:**<br><br>CV 17 2925<br><br>notice of removal, COUNTERCLAIM cross-complaint, challenge to statute, JURY TRIAL DEMAND, jurisdictional challenge, adverse possession claim at Controversy violations of the fair debt collections practices act the fair credit reporting act the FCCPA, the Frank Dodd act, the Bailey act, the federal housing act, the NONJUDICIAL FORECLOSURE act, the fair debt procedures act, taxation suit, and lack of standing... et al |

TO THE CLERK OF THE ABOVE ENTITLED COURT:PLEASE TAKE NOTICE THAT Eeon, a natural individual standing sui juris in his Natural Capacity, et al; Concetta Mcbride a natural woman standing sui juris in Her Natural Capacity, et al: and all other occupants, individuals as well as non-individuals, et al., to be referred to and/or referenced as the petitioner's does hereby removes this action from the Superior Court of the Republic of California, County of Monterey, to the federal Court for the Republic of California at San Jose and sets forth in support of its NOTICE OF REMOVAL, AMENDED COMPLAINT, COUNTER SUIT, ADVERSE POSSESSION CLAIM, INJUNCTION AND OTHER WRIT REQUEST, JURY TRIAL DEMAND of Action of the following:

        I.      Statement of claim, and affidavit:

1.      On January 11, 2017, an action was commenced in the Superior Court of the State of California, County of Monterey, entitled Deutsche Bank, et al; v. McBride as Case Number 17 cv 000216 copies of the complaint (the "Complaint") and summons in that action are attached hereto as Exhibits and not to be construed as evidence, for we categorically deny and refute each one of the claims made by the defendant/respondents.

2.      On or about January 12, 2017, the attorney for Deutsche Bank, etc. al; filed proofs of service as to all four named defendants. With one exception, this is not my mailing address (Eeon,) I was not named in the complaint, in fact I was out of town because my mother was terminally ill with cancer and passed away February 3, 2017.

3.  According to the proof of service the attorney for Deutsche Bank, et al.; claimed that he had served upon all parties at the home by means of personal delivery to a registered agent. On information and belief, however, I did not receive, and there is no record of my receiving service of such delivery.

4.  According to the proof of service relating to that produced by Deutsche and its representative, by means of substitute service delivered to the property address in Salinas of Monterey COUNTY, of the Republic of California. On information and belief, however, I receive all of my business mail at the Republic of Washington state, and I do not do, business in California, and do not have any office or other place of business in California. Deutsche could not therefore have effected, and did not effect, valid service on myself as I am a sublet tenant.

.   On or about April 17, 2017 I proceeded to contact the Deutsche Bank attorney notifying him of my presence at this location the registered agent, and he indicated that the complaint did not concern me, that he'd only issued one complaint and one summons to the home. I did inform him that I was aware that if he was going to serve a summons and complaint on more than one party he would have to serve more than one summons and complaint and he agreed that the law stipulated as much.

6.  The Complaint alleges that the defendants/respondents have conspired to violate the laws of the Republic of California, the Constitution for the Republic of California, the citizens of the Republic of California for which the petitioners are a member of that group, the property rights of the petitioners.

7.  That the defendants/respondents have claimed there to be a debt in excess of $1.4 million, a debt that they are not lawfully permitted to foreclose on. The FHA act requires all FHA funded homes to go through a particular procedure before the home and/or loan may be foreclosed on, the defendants/respondents what respects the primary Deutsche Bank, et al.; and the other respondents' collusion have violated that federal statute.

8.  The defendant respondents have violated the tax and revenue laws and that they have sought to enforce an unlawful judgment with taxpayers' monies, which is strictly prohibited by law. We present to this body that any decision made by any party, entity, corporation, body claiming to represent government when in fact they do nothing of the sort is void and/or voidable at law.

9.  Because of the existing laws, the restrictive endorsement on the original mortgage note, the restrictive endorsement on the refinance note, the securitization of the deed of trust, the note was converted to a security, that conversion was then credited by the United States government under title VII of the US code, and title seven of Code of Federal Regulations.

10. Once the conversion was made the United States government credited the account of the original lenders, thus satisfying the requirement for value and consideration.

11. Once the respondents i.e. the lender's receipt consideration the note was deemed paid in full at par value, see the servicing agreement for the guaranteed loans of the federal government would reference to title VII of both the US code and Code of Federal Regulations. There can be and will be no argument on this issue as their tax records prove that they have been compensated, the problem is they have never proved that they have not been compensated, they brought forth a claim, we have challenged their claim prior to them entering any courtroom. We challenged their claim in writing and demanded that state as a debt collector validate the debt, they have refused to validate the debt in violation of several consumer laws.

12. As indicated because they claim that there was a disputed debt, and that they were making an attempt to collect on a debt, and they also communicated via telephone communication, wire communication, and or the United States mail service they by statutory definition are deemed a debt collector.

13. Once a debt has been disputed, the debt collector is prohibited from proceeding one step further until they validate the debt and not just verify a debt. Debt validation is crucial in essential in the debt collection process, the respondents have violated the spirit of the law, knowingly, intentionally, deliberately, and in an ongoing conspiracy to deprive the petitioners as well as other citizens of the state of California of their right to property without due process of law.

14. The petitioners bring forth their claim of $9 million, this is to include penalties, interest, administrative fees and other associated costs.

## II.    Complete Diversity Exists

15. He to the respondents/defendants are deemed to be California corporations, each of them has existed, does exist, our existing in a corporation capacity within the County of mountain air Monterey of the Republic of California, thereby constituting jurisdiction for this body.

16. The property address, the parcel address, the metes and bounds, the physical address, as well as the land are located within the Republic state of California County of Monterey thereby bestowing jurisdiction on the federal court. Please understand this is not to mistake the United States District Court, with the federal court one being a administrative body the other being a judicial body of the judicial branch of government. We are petitioning the judicial branch of government if it is deemed that this is not a right of every man or woman in the United States then we will need for that information to be placed on record with facts and conclusions of law, and how the notification of the seventh amendment, the sixth and seventh articles, and due process

clause associated with those instruments have been repealed. Please note that we do waive any and all claims to the 14th amendment section one of the United States Constitution, and choose as well as elect to retain and reserve our rights what respects to the fourth amendment, the Fifth Amendment, and the seventh amendment of the Constitution which clearly documented the right to due process, the right to property, the right to be free from unreasonableness, and the right to file suit at common law which may only be had in a judicial branch courtroom before a judicial body.

17. We categorically deny any and all claims of the respondent/defendant's, and any and all evidence placed into the record by the respondents/defendants has not been verified and we do hereby challenge said evidence is being improper and unlawful.

18. The respondents/defendants filed the state level complaint and that phase, and have continued to operate in bad faith. The clerk of the court for the Monterey County Superior Court has also operated in bad faith, not only that they receive the filing in response for the lower court case number 17 CV 000216 but they also receive notification of an adverse claim, through a case filed in the same court on the exact same day of the response to 17 CV 000216, which case number is 17 CV 000389.

19. I the respondents/defendants received via certified mail a copy of the adverse claim filed via the directly related case number 17 CV 000389, then conspired with the clerk of the court as if no response had ever been filed with the court.

20. The Superior Court of Monterey County clerk of the court along with its judicial officers proceeded to deny access to subpoenas, and dismiss the cross-complaint in violation of its own policies and standards. On or about April 2nd, 2017 Ms. McBride the filer of 17 CV 000389 received a notice that a hearing was scheduled for 14 April 2017, Ms. McBride notified the court immediately upon receipt of this notice that a prescheduled medical appointment was a conflict, and because this medical appointment was scheduled months in advance due to the nature of the appointment and the distance, she would be requiring the court to reschedule that hearing.

21. Upon receiving the notice from Ms. McBride as to the unavailability of attending the hearing scheduled by the Superior Court of Monterey COUNTY, the court of Monterey COUNTY completely ignored the requests and continue with the hearing without due process of law.

22. Ms. McBride informed the court of the conflict, placing petitions before the court to which the court ignored and proceeded to dismiss her matter without giving her the opportunity for a proper hearing. The dismissal the matter constituted undue surprise for the record will clearly document that notice of the scheduling conflict had been received by the court, and phone records will clearly document that several communications with the clerk of the court were ongoing to find out the nature as to the rescheduling of the hearing. This was undue surprise then the court was prohibited

from moving forward on any motion until the issue of whether or not one Have properly notified the court of a scheduling conflict, and whether or not the court had actually properly addressed such a conflict in accords with due process.

23.  Ms. McBride immediately appealed the matter petitioning FOR STAY with the appeals court and while that stay was pending the defendants conspired together to proceed to deprive Ms. McBride of her property without due process of law.

III.  Initiating a Complaint against the Defendants

24.  On or about May 16, 2017 at or about 9:30 AM the Monterey County Sheriff's Department had one of its process servers, a deputy hand-deliver a copy of the writ of possession issued by the clerk of the court. The deputy seeing that my name was not on the complaint documented the fact, and it myself the paperwork thus constituting service of that notice.

25.  It was on or about May 16, 2017 that I was served as a unnamed party to a suit filed on or about January 12, 2017; the very same complaint that the respondents attorney had stated I was not a party to, as I was not named in the complaint.

26.  After checking the Internet for my options when not named in the complaint and responding to a writ of possession order I proceeded to process a right to possession claim which is attached hereto and to deliver that directly to the Sheriff's office via fax machine. Because I do not have fax service, I contacted an associate and had that individual fax the information for me receiving a confirmation that the facts had gone through Friday the 19th of May 2017 at approximately 4:30 PM.

27.  On the morning of May 22, 2017 I proceeded to file a copy of my response to the writ of possession, as of yet to this day I have not been properly served a copy of the original summons and complaint, and say that despite the improper service I have presented my response to that court.

28.  Because of the court's dealings with Ms. McBride and her explaining to me the prejudicial treatment she's received from the clerk of the court, the many occasions she's had to communicate with supervisors regarding the deputy clerk's, we realize that we were not gonna get any access to due process within the Monterey County Superior Court, and proceeded to process this notice of removal to the federal court.

29.  Although the named defendants in the state matter 17 CV 00039 have agreed to having this matter removed to the federal Court through the notice of removal statute. Because Eeon was not served a copy of any documents prior to May 16, 2017 the statute of limitation of 30 days are met, as the statute of limitation does not commence to run until one is made aware that a matter is pending, or the last overt act has been accomplished. I say again that I protest that the only service of process done on my

person was through that of the writ of possession and not the original summons and complaint.

30.    I also presented this body that the defendants were fully aware that there were more than one party age of majority adult living at the home, and was thereby required to issue a separate summons and/or complaint for each and every separate adult living at the home. The defendants/respondents delivered only one copy of the summons and complaint thus constituting an effective service a violation of due process.

31.    The Complaint also names Ms. McBride, Mr. McBride and all other occupants, there should've been three complaint and summonses attached at least to the original service of process which is indicated but not the case as evidenced by the original record. Pursuant to 28 U.S.C. §1441(a), the citizenship of these defendants is disregarded.

32.    This is a civil action over which the federal Court has original jurisdiction under the provisions of 28 U.S.C. §1332 and may be removed to this Court by the Defendants of the lower court matter 17 CV 000216 pursuant to the provisions of 28 U.S.C. §1441(a) because it is a civil action between citizens of different states, or of the same state and the matter in controversy herein exceeds the sum or value of $75,000, exclusive of interest and costs. The Other Requirements for Removal Are Met.

33.    This NOTICE OF REMOVAL, AMENDED COMPLAINT, COUNTER SUIT, JURY TRIAL DEMAND is being filed within thirty (30) days of service on the 2nd-served defendant. Thus, this NOTICE OF REMOVAL, AMENDED COMPLAINT, COUNTER SUIT, JURY TRIAL DEMAND is timely filed under 28 U.S.C. §1446(b).

34.    Removal to this Court is proper as the Superior Court of the State of California, County of Monterey, where this action was originally filed, is located within this federal court jurisdiction.

35.    Counsel for Eeon and Ms. McBride certifies that it will file a they copy of this NOTICE OF REMOVAL, AMENDED COMPLAINT, COUNTER SUIT, JURY TRIAL DEMAND, et al. with the Clerk of the Superior Court of the State of California, County of Monterey, and give notice of same to all named respondents/defendants associated hereto and their nongovernmental capacity.

36.    The petitioners Eeon, and McBride hereby elects to proceed with the removal of this action.

37.    The amount in controversy exceeds $9 million.

38.    Amount in Controversy — Punitive Damages.  The Complaint also seeks punitive damages. (The Petitioners, Prayer for Relief.)  Punitive damages are considered part of the amount in controversy.  See Sanchez v. Wal-Mart Stores, Inc., No. S-06-cv-2573 DFL

KJM, 2007 U.S. Dist. LEXIS 33746, at *5-6 (E.D. Cal. May 8, 2007) (including punitive damages for amount in controversy under CAFA); Alexander v. FedEx Ground Package Sys., Inc., No. C 05-0038 MHP, 2005 U.S. Dist. LEXIS 5129, at *15 (N.D. Cal. Mar. 25, 2005) (same). We believe that damages, compensatory and punitive, should or will be awarded in this case; and, for purposes of the amount in controversy requirement, claimed punitive damages should be considered.

39.    Amount in Controversy – Attorneys'/counsel' Fees. Plaintiff also seeks an award of counsels' fees. (The petitioners, Prayer for Relief.) This amount is likewise included in the amount in controversy calculation. See Mo. State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933); Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005), amended by 2006 U.S. App. 19LEXIS 3376 (9th Cir. Feb. 13, 2006); see also, e.g., Sanchez, 2007 U.S. Dist. LEXIS 33746, at *6 20(including attorneys' fees in calculation).

40.    THE PETITIONERS confirm this, alleging that "millions [of dollars] were collected" for "servicing and/or maintaining the loan that could not be reasonably and reliably due" as claimed by the Respondents/defendants Deutsche Bank, et al;. THE PETITIONERS alleges that "Plaintiffs are also informed and believe and based thereupon allege that they themselves individually do claim and have sustained damages necessary to invoke jurisdiction under statute".

41.    No CAFA Exclusions. The action does not fall within any exclusion to removal jurisdiction recognized by 28 U.S.C. § 1332(d), and therefore this action is removable pursuant to 28 U.S.C. §§ 1332 and 1453.

## IV.    CONCLUSION

42.    For all of the reasons stated above, this action is within the original jurisdiction of this Court article 3 pursuant to 28 U.S.C. § 1332. Accordingly, this action is removable pursuant to 728 U.S.C. § 1441(a) and § 1453.

43.    For the sake of time and for the sake of the record we do hereby incorporate all of the responses by myself Eeon and those filed by Ms. McBride in both the related case and in the lowers court matters, along with the arguments, advertisements, factual and lawful conclusions into this record by attachment and by reference.

44.    Motion in Trover, and Temporary Restraining Order an injunction are also incorporated into this petition by reference.

45.    Renumbered for incorporation purposes:

I/we DECLARE THE FOLLOWING BY WAY OF THIS AFFIDAVIT:

I.    Emergency Injunctive remedy at equity:

1. I Eeon bring forth this action for declaratory and injunctive relief, alleging that the Sheriff's, clerk of the court, the officer that the court, and the respondents practice of evicting any person and or unnamed adults on the premises violated the petitioner's rights to procedural due process and to be free from unreasonable searches and seizures.

2. I also bring this as part of my counterclaim a taxpayer's suit (Code Civ. Proc., § 526a) to enjoin the Sheriff, the clerk of the court, the office of the court, (when mentioning clerk of the court, and officer that the court, the term court refers to the administrative office of the court, or the entity for which the clerk of the court and the officers are registered thereby, there to, associated therewith) from expending public funds to carry out their policy of evicting any occupant would reference to FHA loans, FHA properties, government-backed secured loans, mortgages evidencing mortgage default insurance, restricted and/or otherwise endorsed mortgage notes, deeds of trust that have been securitized and traded on the market of which the borrower does not receive consideration for the trading on the market and or interest payments as a trust interest holder.

3. The superior court issued an order directing the landlord and the Sheriff take overseas property in the name of administrating justice. However, justice cannot do injury, and in this instance the actions of the superior courts officers, and the Sheriff's department is an office of the Superior Court when performing ministerial duties on behalf of the Superior Court, has caused injury by violating the due process rights of the petitioners.

4. The clerk of the court along with or in addition to the Monterey County Sheriff's Department and the so-called landlord Deutsche bank, etc al, are required by the California procedure code to show cause why they should not be enjoined from evicting the McBride family, Eeon, and all other occupants and until such time this court should instructed the Sheriff not to evict.

5. The court should also instruct the Sheriff to show cause why, in other cases, he should not be restrained from evicting any adult in possession without prior confirmation that the writ is valid through some sort of a validation process. As the process stands in its current state the Sheriff just receives a piece of paper and proceeds to act, however, because the actions of the Sheriff involve the possible interference with secured rights of the Republic of the state of California citizens, who were thereby protected against encroachments on their rights, there must be further checks and balances to avoid impropriety.

6. With Eeon and the other petitioners personal action, the adverse possession claim supported by affidavit and the suit that proceeds as a taxpayer's action against the Sheriff and the clerk of the court to estop these two groups from further joiner and or co-mingling. [31 Cal. 3d 386] the court must recognize this matter as a controversy and proceed in accords with due process of law and equity

      II.      INCORPORATION BY REFERENCE:

7. I do hereby incorporate the presentments presented to this body either by myself and or Ms. McBride into this presentment and matter by reference.

8. I further incorporate into this matter the United States of America Constitution, the Constitution for the state of new Columbia, the United Nations declaration on human rights, the law of nations, United States statute at large, the fair debt collections practices act, the fair debt collections procedures act, the federal housing acts, the United States securities acts, the internal policies of the courts of the United States and that of the Republic state of California, the separation of powers act/clause, the trust indenture act, the truth in lending act, the fair credit reporting act, the nonjudicial foreclosure act, natural laws, and the foundation of all laws contained in the book commonly referred to as the Holy Bible; by reference.

### III.    TAXATION AND REVENUE LAWS:

9. Code of Civil Procedure section 1174 refers to the "writ of restitution" as the vehicle for restoration of premises after a judgment in unlawful detainer, such writ is merely a type of writ of execution, as described and defined elsewhere. (Code Civ. Proc., §§ 682, 684.)

10. "writ of execution" The clerk court judgment refers to the document as a "writ of possession" -- a process which serves a different function. (See Code Civ. Proc., § 1166a.) It is, however, quite clear what the court meant and the judgment is understood and interpreted as affecting writs of execution.

11. In this instance, the clerk of the court issued a writ of execution to the respondent known as the alleged landlord. We reference the word alleged landlord because the party known as DEUTSCHE BANK, et al; has never prove standing.

12. Yes, DEUTSCHE BANK, et al; obtained a judgment from this court that was in violation of due process otherwise known as a void judgment. Deutsche Bank, et al; was required to prove standing, and although we have requested such standing be proved on the record the court showed favor and preferential treatment to DEUTSCHE BANK, et al; not requiring the proof anything in violation of the due process rights of the petitioners and we object.

13. It's one thing for the public record to show documentation, but just filing a document on the public record doesn't make the action legitimate e.g.: in this instance, the clerk of the court filed a default judgment on the record claiming that the petitioners never responded, is that document proves invalid on its face because it was based on a fraudulent foundation. So just because something appears on the record what a stamp affixed to it doesn't make it a legitimate document, an official record.

### IV.    REMEDY AT EQUITY:

14. Under Maxim of law equity must bring equity, this court exists, in equity, we demand equity, along with affirmative relief.

15. Since the state of California courts deny and/or block access to the judicial branch of government by operating an existing an administrative form i.e. executive branch, as all of the courts of the state of California are listed as private corporations as evidenced by their employer identification numbers or EINs, and their comprehensive annual financial reports inclusive of notes, ledgers, references, and term definitions.

16. Because the facts show that the courts of California are administrative venues, this strips them of jurists.

17. Administrative venues exist under the executive branch of government, **"as the Corporation is a creature of the state owing its existence and chartered power to the state"**, the courts are corporations, creatures of the state, registered with the Secretary of State for the state of California, also a corporation.

18. We differentiate the differences between the state of California and the Republic of California, by highlighting that the Republic is in reference to the organic Constitution of California dated 1849. And the state of California references a privately held in for-profit corporation, rendering it unconstitutional, as there is no provision in the Constitution for government to act as a private for-profit corporation.

19. The government for the Republic state of California is supposed to be a government ran by the people, for the people, and of the people. Because government must act in public interest, and government receives public funds, they cannot use public funds to carry out private business and or to contract with private corporations for private interests, this is a violation of tax and revenue laws.

20. The state of California, the administrative corporation files taxes, if California was immune as a sovereign it would be immune from paying taxes because everyone knows that the sovereign pays no tax; you cannot tax the sovereign.

21. However, the state of California files COMPREHENSIVE ANNUAL FINANCIAL REPORTS, otherwise known as tax reports. These all-inclusive reports prove that the state of California is not government. These all-inclusive reports prove that the state of California in its ADMINISTRATIVE CAPACITY willfully abandons its sovereign capacity and waives its sovereign immunity Permitting itself to be sued, and so we enjoin that corporation into this suit for it is against the laws and the Constitution for anyone to impersonate government.

22. The administrative organization known as the state of California, and the corporations under its umbrella also known as agencies for the state of California when operating as private corporations violate the organic Constitution both federal and state, and the rights of the people of the Republic both federal and state.

     V.     And opinion by the Supreme Court of California:

23. The Supreme Court, and the Congress for the Republic state of California have clearly documented that government agencies may be sued for the misuse and misappropriation of tax funds.

24. In the ruling by the Supreme Court, and the case law associated thereto government agencies have been sued meaning that they did not have the right to claim sovereign immunity while operating in violation of statute, i.e. revenue laws.

25. A taxpayer's suit (Code Civ. Proc., § 526a) is permissible under statute.

26. A taxpayer's lawsuit is a recognized right of a taxpayer, both myself and the other petitioners are deemed California taxpayers as defined by statute; to bring suit against any entity which inappropriately utilizes taxpayer funds to carry out any ministerial duties, and/or administrative actions.

27. **Taxpayer's Suit**. An action brought by an individual whose income is subjected to charges imposed by the state or federal government, for the benefit of that individual and others in order to prevent the unlawful diversion of public funds.

28. A. EXISTING LAW

a. Existing law relating to standing breaks down conveniently into four categories: private interest, public interest, taxpayer suits, and third-party standing. Essentially, plaintiffs are allowed into court to challenge state or local government action if they can satisfy the criteria for any one of these categories. As will be discussed in greater detail in the second judicial review study, persons seeking judicial review under present law must decide under which writ to proceed. In most cases, they seek a writ of mandate (called mandamus at common law). In California, mandate is used to review two very different sorts of agency action. Ordinary or traditional mandate is used when plaintiff claims that a government body has failed to perform a non-discretionary act that the law requires it to perform.[1] So-called "certiorarified" mandate[2] reviews an agency decision resulting from a trial type hearing. In some circumstances, a taxpayer action is appropriate.[3] Under other circumstances, declaratory judgment[4] or the writ of review (called certiorari at common law)[5] is used.

In each case, the statute states a standing requirement. In the case of mandate and review, a plaintiff must be "beneficially interested."[6] A taxpayer plaintiff must be a citizen of the local

---

[1] . Section 1085.

[2] . Section 1094.5. The "certiorarified" adjective has long been used to describe the Section 1094.5 procedure because it adapted mandamus to cover matters historically reviewed under the writ of certiorari. The bizarre historical evolution of Section 1094.5 will be discussed in the second phase of this study.

[3] . Section 526a.

[4] . Section 1060 *et seq.*

[5] . Section 1068.

[6] . Sections 1069, 1086.

jurisdiction involved in the suit.[7] In the case of declaratory judgment, a plaintiff must be "interested" under a written instrument or contract or desire a declaration of his rights or duties.[8] In general, these provisions mirror the general California rule relating to appeals from trial court judgments: a party seeking review must be "aggrieved."[9]

There is a large body of case law that fills out (and indeed expands beyond all recognition) the meaning of these Delphic phrases. Despite occasional detours, the courts have worked out a scheme of judicial review that seems to allow the right plaintiffs to challenge agency action without at the same time creating a vast body of confusion (as the federal courts have done in trying to solve the same problem).

### 1. Private Interest

Most persons seeking judicial review of agency action unquestionably have standing to do so. The action is directed at them; it deprives them of a legal interest or requires them to take action or prohibits them from doing so. Standing is never an issue in such situations because the plaintiff's private interests are directly and adversely affected. Consequently, they meet the "beneficial interest" test contained in the mandate provision or the "interested" test in the declaratory judgment statute.

### a. "Over and above" test

The beneficial interest test is also satisfied where plaintiff incurs some sort of practical harm even if an order is not directed at him and does not deprive him of a legal right. According to the cases, a plaintiff's private interest is sufficient to confer standing where that interest is "over and above" that of the members of the general public.[15] The cases have been generous in granting standing to persons with quite attenuated pecuniary interests who, nevertheless, can claim some actual or potential harm that distinguishes them from the general public.[16] Earlier cases that imposed stricter standards are no longer followed.[10]

In addition, the courts treat non-pecuniary injuries, such as environmental or aesthetic claims, as sufficient to meet the private interest test.[11] Moreover, persons who were made parties to an administrative proceeding automatically have standing to appeal

---

15.    Carsten v. Psychology Examining Comm., 27 Cal. 3d 793, 796, 166 Cal. Rptr. 844 (1980). See Professional Fire Fighters, Inc. v. City of Los Angeles, 60 Cal. 2d 276, 284-85, 384 P.2d 158 (1963) (union president has standing

---

[7] . Section 526a. If plaintiff is a corporation, it must have paid a tax to the local jurisdiction that is the subject of the suit. *Id.*

[8] . Section 1060.

[9] . Section 902. See Association of Psychology Providers v. Rank, 51 Cal. 3d 1, 270 Cal. Rptr. 796 (1990) (psychiatrists are "aggrieved" and thus have standing to appeal from a trial court decision striking down a regulation that might shift income or responsibility from psychiatrists to psychologists).

[10] . See, e.g., United States v. Superior Court, 19 Cal. 2d 189, 197-98, 120 P.2d 26 (1941) (since statute is directed at agricultural handlers, growers have no standing even though the order in question will prevent handlers from purchasing their oranges).

[11] . See, e.g., Bozung v. Local Agency Formation Comm'n, 13 Cal. 3d 263, 272, 118 Cal. Rptr. 249 (1975) (opposition to environmental effects of annexation — plaintiff lives outside area to be annexed); Albion River Watershed Protection Ass'n v. Department of Forestry, 235 Cal. App. 3d 358, 286 Cal. Rptr. 573, 580-88 (1991) (opponents of logging); Kane v. Redevelopment. Agency of Hidden Hills, 179 Cal. App. 3d 899, 224 Cal. Rptr. 922 (1986) (resident of county interested in slower growth); Citizens Ass'n for Sensible Dev. v. County of Inyo, 172 Cal. App. 3d 151, 159, 217 Cal. Rptr. 893 (1985) (geographic nexus with site of challenged project — can be "attenuated").

in both representative and personal capacities to litigate discrimination against union members even though he has not personally been victim of discrimination).

16.     See, e.g., Association of Psychology Providers v. Rank, 51 Cal. 3d 1, 270 Cal. Rptr. 796 (1990) (psychiatrists can challenge regulation that diminished sphere of responsibility of psychiatrists vis-à-vis psychologists); Chas. L. Harney, Inc. v. Contractors' State License Bd., 39 Cal. 2d 561, 247 P.2d 913 (1952) (contractor can challenge regulations preventing it from bidding on certain jobs even though it has no plans to bid on any such jobs); Pacific Legal Found. v. UIAB 74 Cal. App. 3d 150, 141 Cal. Rptr. 474 (1977) (plaintiff has employees — thus can challenge UIAB precedent decision that might someday adversely affect it); Sperry & Hutchinson v. State Bd. of Pharmacy, 241 Cal. App. 2d 229, 50 Cal. Rptr. 489 (1966) (stamp company can challenge regulation banning pharmacists from giving trading stamps); Gowens v. City of Bakersfield, 179 Cal. App. 2d 282, 3 Cal. Rptr. 746 (1960) (hotel required to collect tax from lodgers has standing to challenge tax).

from it, regardless of any other interest.[19] However, if the plaintiff cannot establish that he has suffered some kind of harm from the decision in question, he lacks standing to seek review of the decision.[12]

### b. Associational standing

Present law generously allows standing to associations, including unions, trade associations, or political associations, whether or not incorporated. Such associations can sue on behalf of their members. The only requirements are that a member or members could have met the private interest standard had they sued individually, the interests the association seeks to protect are germane to its purpose, and neither the claim asserted nor the relief requested requires the participation of the individual members.[13] Earlier cases had placed this issue in doubt.[14]

19. Temescal Water Co. v. Department of Pub. Works, 44 Cal. 2d 90, 107, 279 P.2d 963 (1955); Covert v. State Bd. of Equalization, 29 Cal. 2d 125, 130, 173 P.2d 545 (1946) (complainant against licensee who was party to administrative proceeding can seek review of decision denying relief); Beverly Hills Fed. Sav. & Loan Ass'n v. Superior Court, 259 Cal. App. 2d 306, 316 n.7, 66 Cal. Rptr. 183 (1968) (bank resisting grant of license to competitor). But see Madruga v. Borden Co., 63 Cal. App. 2d 116, 121, 146 P.2d 273 (1944) (participant in administrative hearing denied right of review — probably explainable because plaintiff had adequate remedy at law).

The ability of associations to sue on behalf of their members is extremely important. Associations often have much greater resources to pursue litigation than do individuals. Moreover, the association is already in place; it need not be organized for purposes of pursuing a particular case, thus limiting transaction costs. Finally, associational standing avoids the free rider problem inherent in individual litigation where a number of people are affected: each such person hopes that others will bear the costs of litigation and therefore nobody does anything (or one individual unfairly has to absorb the costs of litigation that benefit many people).

---

[12] . Parker v. Bowron, 40 Cal. 2d 344, 254 P.2d 6 (1953) (secretary of union has no standing to challenge city's failure to pay prevailing wages to its employees); Grant v. Board of Medical Examiners, 232 Cal. App. 2d 820, 43 Cal. Rptr. 270 (1965) (no standing to challenge agency action favorable to plaintiff despite presence of language in hearing officer's decision derogatory to him); Silva v. City of Cypress, 204 Cal. App. 2d 374, 22 Cal. Rptr. 453 (1962) (challenger of zoning variance fails to allege that he was detrimentally affected by the decision).

[13] . County of Alameda v. Carleson, 5 Cal. 3d 730, 737 n.6, 97 Cal. Rptr. 385 (1971) (unincorporated association of welfare recipients has standing to appeal trial court decision invalidating welfare regulations); Brotherhood of Teamsters v. UIAB, 190 Cal. App. 3d 1515, 1521-24, 236 Cal. Rptr. 78 (1987) (union can challenge denial of unemployment benefits to its members because of a lockout); Residents of Beverly Glen, Inc. v. City of Los Angeles, 34 Cal. App. 3d 117, 109 Cal. Rptr. 724 (1973) (environmental concerns of canyon residents).

[14] . Parker v. Bowron, 40 Cal. 2d 344, 254 P.2d 6 (1953) (union cannot challenge city's failure to pay prevailing wages to its employees whether or not

*c. Party status as prerequisite to standing*

Must the person seeking judicial review have been a party to the agency proceeding? This issue combines elements of standing and exhaustion of remedies and has caused difficulty. The exhaustion of remedies requirement is that the particular ground on which agency action is claimed to be invalid must have been raised before the agency.[23] The related standing rule is that the particular plaintiff now seeking review of agency action must have objected to the agency action orally or in writing, although not necessary on the grounds that are now the basis for review.[24] However, the courts have drawn exceptions to the rule[25] and also have not applied it

---

some employees were members of the union); Associated Boat Indus. v. Marshall, 104 Cal. App. 2d 21, 230 P.2d 379 (1951) (trade association is not "interested" in a regulation even though its members are). See Professional Fire Fighters, Inc. v. City of Los Angeles, 60 Cal. 2d 276, 283-85, 384 P.2d 158 (1963), which effectively disapproves *Parker*.

23.  The "exact issue" rule is discussed under exhaustion of remedies.

24.  See Friends of Mammoth v. Board of Supervisors, 8 Cal. 3d 247, 26768, 104 Cal. Rptr. 761 (1972).

25.  The *Friends of Mammoth* decision established an exception to the general rule: an association or a class formed after the agency proceeding can sue so long as at least one of its members participated in the agency proceeding. The general rule, and the *Friends of Mammoth* exception, have been codified for California Environmental Quality Act cases in Public Resources Code Section 21177. See Albion River Watershed Protection Ass'n v. Department of Forestry, 235 Cal. App. 3d 358, 286 Cal. Rptr. 573, 580-88 (1991), which suggests the problems raised by the *Friends of Mammoth* exception; Leff v. City of Monterey

consistently.[15] These rather tortured exceptions and inconsistent treatment raise doubts about whether the rule is worth maintaining.

I believe the exhaustion rule is sound but that the standing rule is not.[16] The standing rule forces litigants to jump through unnecessary hoops trying to involve as parties to an appeal persons who were active in protesting something before the agency at an earlier time but are not personally interested in securing review of it. So long as the precise issue on which review is now being sought was considered at the agency level, why should it matter whether the particular plaintiff (or someone in the plaintiff's group) was personally involved in raising that or other issues before the agency?[17]

---

Park, 218 Cal. App. 3d 682, 267 Cal. Rptr. 343 (1990) (exception applied even though not a class action).

---

[15] . Peery v. Superior Court, 29 Cal. 3d 837, 841, 176 Cal. Rptr. 533 (1981); Employees Serv. Ass'n v. Grady, 243 Cal. App. 2d 817, 827, 52 Cal. Rptr. 831 (1966); Brotherhood of Teamsters v. UIAB 190 Cal. App. 3d 1515, 1521, 236 Cal. Rptr. 78 (1987).

[16] . The Model Act provides that a petitioner for judicial review of a rule need not have participated in the rulemaking proceeding on which the rule is based. I believe this is the correct resolution of the issue. MSAPA § 5-107(1).

[17] . A comparable rule requires that a person seeking to appeal a judicial decision have been a party to that case at the trial level. Section 902. However, this has not proved to be a problem, at least in administrative law cases, since persons aggrieved by trial court decisions to which they were not previously parties have been allowed to become parties by moving to vacate the judgment. See Association of Psychology Providers v. Rank, 51 Cal. 3d 1, 270 Cal. Rptr. 796 (1990); County of Alameda v. Carleson, 5 Cal. 3d 730, 737 n.6, 97 Cal. Rptr. 385 (1971); Simac Design, Inc. v. Alciati, 92 Cal. App. 3d 146, 153, 154 Cal. Rptr. 676 (1979). In other cases, parties whose interest appeared on the face of the record were allowed to appeal even though not parties to the trial court deci-

Another exception to the standing rule was established in *Environmental Law Fund, Inc. v. Town of Corte Madera*, 49 Cal. App. 3d 105, 122 Cal. Rptr. 282 (1975). In a case involving public rights, plaintiff was permitted to seek review of a decision by a local planning commission despite having failed to appear at the administrative proceeding. Later cases have limited the *Corte Madera* exception to cases of public as opposed to private right and only where the members of the public failed to receive notice of the proceeding in which they failed to appear. *Resource Defense Fund v. Local Agency Formation Comm'n*, 191 Cal. App. 3d 886, 894-95, 236 Cal. Rptr. 794 (1987); *Mountain View Chamber of Commerce v. City of Mountain View*, 77 Cal. App. 3d 82, 143 Cal. Rptr. 441 (1977).

### d. Victim standing

A related issue is whether a person who has complained to an agency about a professional licensee should be allowed to challenge an agency decision in favor of the licensee. In some cases, at least, a victim might claim private interest standing on the grounds that the administrative decision will have a bearing on some related litigation (such as a malpractice case). I would deny standing to such a person (unless that person had been made a party at the administrative level). The Commission has already decided in the adjudication phase of its study of administrative law that there should be no right of private prosecution. It would be consistent with that approach to deny standing to seek judicial review to a complainant against a licensee who has not been made a party to the administrative proceeding and who had no right to become a party under a statute specific to the agency.[29]

### e. Local government standing

One confusing group of standing cases concerns the issue of whether a unit of local government can sue the state on the basis that a state statute is unconstitutional. It seems that local government can sue based on the commerce or supremacy clauses but not due process, equal protection, or the contract clause.[30] These dis-

---

sion. *Harris v. Alcoholic Beverage Control Appeals Bd.*, 245 Cal. App. 2d 919, 923, 54 Cal. Rptr. 346 (1966). Consequently, I see no need to recommend modification of Section 902.

29.   If the complainant has been made a party to the administrative proceeding, or has a statutory right to become a party, the complainant should have standing to appeal from the decision. *Covert v. State Bd. of Equalization*, 29 Cal. 2d 125, 173 P.2d 545 (1946).

30.   See *Star-Kist Foods, Inc. v. County of Los Angeles*, 42 Cal. 3d 1, 227 Cal. Rptr. 391 (1986).

tinctions seem difficult to justify.[18] Local government should have standing to sue the state.[19]

### f. Comparison to federal law

The California rules on private interest are blessedly free of the complications that have arisen in federal cases where the courts seem bent on restricting standing as far as possible to limit the

---

[18] . In general, units of local government have standing to sue the state under the private interest test. See, e.g., *County of Contra Costa v. Social Welfare Bd.*, 199 Cal. App. 2d 468, 18 Cal. Rptr. 573 (1962) (county ordered to pay welfare by state board). There is no apparent reason to treat certain constitutional claims differently for standing purposes.

[19] . Of course, granting standing is not equivalent to a ruling that the plaintiff has a cause of action. If the constitutional provision in question does not, as a matter of substantive law, protect local government, the suit should be dismissed on the merits, not on the basis of a lack of standing. *Star-Kist Foods, Inc. v. County of Los Angeles*, 42 Cal. 3d 1, 227 Cal. Rptr. 391 (1986).

caseload of the federal courts and prevent judges from meddling in matters that do not concern them.[20] For example, judicial review under federal law requires not only that the plaintiff have been "injured in fact," it also requires that the plaintiff be within the "zone of interests" arguably protected or regulated by the statute or constitutional provision in question.[21] The courts have found the "zone of interest" test extremely difficult to apply; in my opinion there is no persuasive rationale for it. Even more important, federal courts impose strict requirements of causation and remediability;[22] the agency action must have caused the injury to the plaintiff (without the intermediate actions of some third party) and judicial action against the defendant must be likely to remedy that injury. These requirements have been quite strictly applied, yet the tests remain unpredictable in practice.[36] Again, in my opinion, there is no need for these tests. Unfortunately, the zone of interest test, as well as the causation and remediability tests, were built into the Model Act's standing provision.[37] California should not follow the Model Act's lead on this point.

**2. Public Actions.**
California cases arising under the ordinary mandamus remedy of Section 1085 have been extremely forthcoming in allowing plaintiffs who lack any private injury as described above to sue to vindicate the public interest.[23] In a recent California Supreme Court case, for example, plaintiffs were given standing simply in their role as citizens to sue a county for failing to implement state law by not deputizing county employees as voting registrars.[24] While some earlier cases cast doubt on the public interest rule,[25] the newer cases emphatically endorse it.[26]

36.      See, e.g., Allen v. Wright, 468 U.S. 737 (1984).
37.      MSAPA § 5-106(a)(5)(ii)-(iii).

---

[20] . The reader will be grateful that the author considers an extended discussion of the federal standing cases beyond the scope of this study.

[21] . The U.S. Supreme Court strongly endorsed the zone of interest test in Air Courier Conference v. American Postal Workers Union, 111 S. Ct. 913 (1991) (postal employees not within zone of interest of statute giving post office a monopoly).

[22] . These tests are constitutional, as opposed to prudential rules like the zone of interest test. Congress can alter the zone of interest test, but cannot abolish the causation and remediability tests.

[23] . Since Section 1086 requires that a mandate plaintiff be "beneficially interested," these cases are dramatic examples of judicial lawmaking.

[24] . Common Cause v. Board of Supervisors, 49 Cal. 3d 432, 261 Cal. App. 3d 574 (1989) (plaintiff can seek mandate as well as provisional relief).

[25] . Carsten v. Psychology Examining Comm., 27 Cal. 3d 793, 166 Cal. App. 3d 844 (1980), refused to allow a member of an agency to obtain judicial review of the actions of that very agency. The case contains language which would undercut the public interest exception. Later cases limit *Carsten* to its facts — for policy reasons, an agency member should not be allowed to sue her own agency. Green v. Obledo, 29 Cal. 3d 126, 143-45, 172 Cal. Rptr. 206 (1981). Parker v. Bowron, 40 Cal. 2d 344, 254 P.2d 6 (1953), refusing to allow an individual or unions standing to compel a city to comply with a requirement that it pay prevailing wages, also casts doubt on the public interest rule, but must be considered obsolete.

[26] . See Green v. Obledo, 29 Cal. 3d 126, 143-45, 172 Cal. Rptr. 206 (1981) (plaintiff can attack regulation denying welfare benefits including both the portion that denies her benefits and other portions that have no effect on her); Pitts v. Perluss, 58 Cal. 2d 824, 829, 27 Cal. Rptr. 19 (1962) (citizen urging enforcement of department's duty to adopt regulations); Hollman v. Warren, 32 Cal. 2d 351, 196 P.2d 562 (1948) (constitutionality of statute limiting number of notaries that can be appointed); Board of Social Welfare v. County of Los Angeles, 27 Cal. 2d 98, 162 P.2d 627 (1945) (replacement of expired welfare checks);

The rationale for this rule has been stated several times: "[W]here the question is one of public right and the object of mandamus is to procure enforcement of a public duty, the relator need not show he has any legal or special interest in the result since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced."[42] Public interest standing "promotes the policy of guaranteeing citizens the opportunity to ensure that no government body impairs or defeats the purpose of
legislation establishing a public right."[43]

Apparently, this rule applies only to mandate, not to actions for declaratory judgment.[44] There seems to be little reason for the distinction and a new statute should generalize the public injury test to all actions for judicial review of agency action.

In my view, the public interest rule works well. It has no counterpart on the federal level where a plaintiff must always demonstrate both "palpable" and "particularized" injury in fact.[45] I

---

Frank v. Kizer, 213 Cal. App. 3d 926, 261 Cal. Rptr. 882 (1989) (patients have standing to compel compliance with federal Medicaid regulations even though their particular cases have already been settled); American Friends Serv. Comm.
v. Procunier, 33 Cal. App. 3d 252, 255-56, 109 Cal. Rptr. 22 (1973) (action to force agency to comply with state rulemaking requirements); Newland v. Kizer, 209 Cal. App. 3d 647, 257 Cal. Rptr. 450 (1989) (action to force agency to adopt regulations); Madera Community Hosp. v. County of Madera, 155 Cal. App. 3d 136, 201 Cal. Rptr. 768 (1984) (same); Environmental Law Fund, Inc. v. Town of Corte Madera, 49 Cal. App. 3d 105, 122 Cal. Rptr. 282 (1975) (environmental group challenging approval of development); McDonald v. Stockton Metro. Transit Dist., 36 Cal. App. 3d 436, 440, 111 Cal. Rptr. 637 (1973) (action to compel city to build bus shelters under its contract with DOT); *In re* Veterans' Indus., Inc., 8 Cal. App. 3d 902, 88 Cal. Rptr. 303 (1970) (compelling court to exercise cy pres discretion).

42.    Board of Social Welfare v. County of Los Angeles, 27 Cal. 2d 98, 101, 162 P.2d 627 (1945).

43.    Green v. Obledo, 29 Cal. 3d 126, 144, 172 Cal. Rptr. 206 (1981).

44.    Sherwyn v. Department of Social Servs., 173 Cal. App. 3d 52, 218 Cal. Rptr. 778 (1985) (a case decided primarily on ripeness grounds); American Friends Serv. Comm. v. Procunier, 33 Cal. App. 3d 252, 255-56, 109 Cal. Rptr. 22 (1973).

45.    See, e.g., Schlesinger v. Reservists' Comm., 418 U.S. 208 (1974) (challenge to practice of members of Congress holding military positions);

believe that plaintiffs who wish to incur the expense and bother of litigating public interest questions, such as the illegality of government action, should be allowed to do so. There is no reason to believe that the existing California public interest rule, or the generous provision for taxpayer suits discussed below, has caused any significant problems by way of harassing agencies or flooding the courts.[46] Nevertheless, the Commission may wish to consider some limitations on public interest or taxpayer suits, such as a bond requirement[47] or a requirement that the Attorney General or local law enforcement authority be first notified and given an opportunity to sue before the public interest or taxpayer suit is filed.[48] I do not recommend either of these measures, absent some empirically based showing that public interest suits are posing a serious problem of harassment or obstruction of public programs.

Aside from the risk of harassment or obstruction, the problem with the public interest rule is definitional. It may be far from self evident whether a particular claim really meets the standards of public right-public duty. So far, at least, this has not proved difficult; the courts have stated that where the public duty is sharp and the public need weighty, a plaintiff needs to show no personal

Sierra Club v. Morton, 405 U.S. 727 (1972) (Sierra Club lacks standing to challenge development program despite its historic commitment to protection of the Sierras).

46.     See Carsten v. Psychology Examining Comm., 27 Cal. 3d 793, 805-06, 166 Cal. Rptr. 844 (1980) (dissenting opinion). Justice Richardson's dissent in this 4-3 decision persuasively attacked the majority's rule which precludes a member of an agency from suing her own agency. The dissent thought this was a perfectly appropriate citizen suit and asserted (admittedly without statistical support) that the existing law had caused no problems for government or the courts.

47.     In the court's discretion, plaintiff might be compelled to post a bond to cover the defendant's costs. See Comment, *Taxpayers' Suits: Standing Barriers and Pecuniary Restraints*, 59 Temple L.Q. 951, 974-76 (1986). Such a requirement would be akin to that imposed on plaintiffs in stockholder derivative suits. See Corp. Code § 800(c)-(f).

48.     *Cf.* Keith v. Hammel, 29 Cal. App. 131, 154 P. 871 (1915) (taxpayer's action against sheriff should have first been presented to proper county officers to give them a chance to sue).

need; but if the public need is less pointed, courts require plaintiff to show his personal need for relief.[49] While vague, this test seems serviceable. As discussed below, it is probably not possible to draft anything very specific on this point.[50]

### 3. Taxpayer Actions

Historically California has been extremely receptive to actions brought by taxpayers to restrain illegal or wasteful expenditures.[27]In 1906, the enactment of Code of Civil Procedure Section 526a formalized the existing case law on the subject. While Section 526a applies only to local government entities, the case law evolution of the remedy has continued so that taxpayer actions can be brought against state officials[28] or local government entities not mentioned in Section 526a.[29]

49.     McDonald v. Stockton Metro. Transit Dist., 36 Cal. App. 3d 436, 440, 111 Cal. Rptr. 637 (1973).

50.     This study does not discuss the recovery of attorney's fees by a successful plaintiff. However, under Section 1021.5, a court may award fees to a successful plaintiff in any action which has resulted in the enforcement of "an important right affecting the public interest if (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any...." If the Commission wanted a definition of public interest standing, it could adapt the test in Section 1021.5(a).

The purpose of taxpayer actions is to "enable a large body of the citizenry to challenge governmental action that otherwise would go unchallenged in the courts because of the standing

[27] . See generally Myers, *Standing in Public Interest Litigation: Removing the Procedural Barriers*, 15 Loy. L.A. L. Rev. 1 (1981); Note, *California Taxpayer Suits: Suing State Officers under Section 526a of the Code of Civil Procedure*, 28 Hastings L. Rev. 477 (1976). Non-California discussions of taxpayer actions include Comment, *Taxpayers' Suits: Standing Barriers and Pecuniary Restraints*, 59 Temple L.Q. 951 (1986) (virtually every state allows taxpayer suits against both state and local government); Note, *Taxpayers' Suits: A Survey and Summary*, 69 Yale L.J. 895 (1960).

[28] . Stanson v. Mott, 17 Cal. 3d 204, 222-23, 130 Cal. Rptr. 697, 708-09 (1976); Ahlgren v. Carr, 209 Cal. App. 2d 248, 25 Cal. Rptr. 887 (1962).

[29] . Los Altos Property Owners Ass'n v. Hutcheon, 69 Cal. App. 3d 22, 137 Cal. Rptr. 775 (1977) (action against school board can be brought under Section 526a as well as under the common law); Gogerty v. Coachella Valley Jr. College Dist., 57 Cal. 2d 727, 371 P.2d 582 (1962).

requirement ... California courts have consistently construed Section 526a liberally to achieve this remedial purpose."[30]

Taxpayer actions can be brought to enjoin expenditures that are contrary to local or state statutes (so called "ultra vires" expenditures) or are contrary to constitutional restrictions. Taxpayers can enjoin programs that involve spending only trivial sums or even non-spending government activities provided that governmental employees are paid a salary to execute them.[31] A program can be enjoined even if it does not involve the spending of tax dollars or even if it makes money[32] or even though there are also individuals whose private interest would have allowed them to sue.[33] Taxpayer actions cannot be defeated by claims that plaintiff is seeking an advisory opinion or that there is no case or controversy.[34] And actions for declaratory relief or damages are also permitted, even though Section 526a appears limited to injunctions.[35]

---

[30] . Blair v. Pitchess, 5 Cal. 3d 258, 267-68, 96 Cal. Rptr. 42 (1971). For example, despite the limitation in Section 526a restricting standing to citizen residents of the jurisdiction whose expenditures are being challenged, the courts have allowed nonresident taxpayers to sue. Irwin v. City of Manhattan Beach, 65 Cal. 2d 13, 18-20, 51 Cal. Rptr. 881 (1966) (allowing nonresident corporate but not individual taxpayers to sue violates equal protection).

[31] . Regents of Univ. of Cal. v. Superior Court, 3 Cal. 3d 529, 542, 91 Cal. Rptr. 57 (1970) (University's refusal to employ communists); Wirin v. Parker, 48 Cal. 2d 890, 894, 313 P.2d 844 (1957) (use of public funds to conduct illegal police surveillance); Wirin v. Horrall, 85 Cal. App. 2d 497, 504, 193 P.2d 470 (1948) (use of funds to conduct police blockades).

[32] . Blair v. Pitchess, 5 Cal. 3d at 267-68.

[33] . Van Atta v. Scott, 27 Cal. 3d 424, 166 Cal. Rptr. 149 (1980).

[34] . Blair v. Pitchess, 5 Cal. 3d at 267-68.

[35] . Van Atta v. Scott, 27 Cal. 3d at 424 (declaratory relief); Stanson v. Mott, 17 Cal. 3d 204, 222-23, 130 Cal. Rptr. 697, 708-09 (1976) (damages if defendant failed to exercise due care in illegally spending state funds). See Keller v. State Bar, 47 Cal. 3d 1152, 255 Cal. Rptr. 542 (no personal liability of Bar governors for spending Bar funds on election since they reasonably believed the expenditure was authorized).

Less clear is the degree to which "wasteful" expenditures can be enjoined. Section 526a, but not common law taxpayer actions, allow actions restraining governmental waste;[36] presumably this means spending that cannot achieve any proper governmental purpose even though it is not ultra vires. The vagueness of the "waste" concept gives rise to concern.[37]

California law relating to taxpayer suits is completely at variance with federal law. Federal cases have rejected taxpayer actions[38] with the single, somewhat anomalous exception of taxpayer actions to enforce the establishment clause, which are permitted.[39]

### 4. *Jus Tertii* — Enforcing Rights of Third Parties.

In some situations, a person (*A*) would have standing to seek review because of some personal legal or practical harm to its interests. For some reason, however, *A* does not or cannot actually seek review. Another party (*B*), who might not meet any of the standing criteria on its own, seeks review on *A*'s behalf. Suing to enforce the rights of third parties is often referred to as *jus tertii*. California cases, like federal cases, make provision for *jus tertii* in appropriate cases.[40]

Two factors have been employed in deciding whether *B* can sue. First, what is the relationship between *B* and *A*? *B* is likely to have standing if *A*'s rights are inextricably bound up with an activity that *B* wishes to pursue. Second, is there some practical obstacle to *A* seeking review itself?[65]

In the California cases that have permitted suit under the *jus tertii* approach, both factors pointed in the direction of permitting standing. For example, in *Selinger v. City Council of Redlands*,[66] a state statute required automatic approval of a subdivision application if not denied within one year. Arguably this statute denied due process to adjacent landowners who normally would be entitled to notice and a hearing on the application. But the adjacent landowners were not notified and the subdivision was automatically approved after one year. A city was permitted to sue on behalf of the landowners. The statute interfered with the city's zoning pro-

---

policies of a state agency. Sherwyn v. Department of Social Servs., 173 Cal. App. 3d 52, 218 Cal. Rptr. 778 (1985).

In the venerable case of Parker v. Bowron, 40 Cal. 2d 344, 254 P.2d 6 (1953), the question was whether a city was complying with a prevailing wage law; neither unions (that contained some city workers) nor the secretary of those unions was permitted to assert the rights of city employees. The *Parker* case has clearly been superseded by later cases involving the right of associations to vindicate the rights of their members. See *supra* text accompanying notes 21-22. *Parker* might still be followed, however, on the question of whether the secretary of the union could

---

[36] . Los Altos Property Owners Ass'n v. Hutcheon, 69 Cal. App. 3d 22, 137 Cal. Rptr. 775 (1977).

[37] . Harnett v. County of Sacramento, 195 Cal. 676, 683, 235 P. 45 (1925) (court can enjoin a redistricting election which could not achieve desired result); Los Altos Property Owners Ass'n v. Hutcheon, 69 Cal. App. 3d 22, 137 Cal. Rptr. 775 (1977) (claim that school board's consolidation plan would cost more than plaintiff taxpayer's alternative plan states cause of action for waste); City of Ceres v. City of Modesto, 274 Cal. App. 2d 545, 555-56, 79 Cal. Rptr. 168 (1969) (installation of sewer lines — wasteful, improvident, and completely unnecessary public spending can be enjoined by a taxpayer even though done in exercise of lawful power).

[38] . Valley Forge Christian Sch. v. Americans United, 454 U.S. 464 (1982).

[39] . Flast v. Cohen, 392 U.S. 83 (1968).

[40] . *Jus tertii* is not automatic, however. For example, *B* was not allowed to sue on *A's* behalf where *B* and *A* had conflicting interests. Camp Meeker Sys., Inc. v. PUC, 51 Cal. 3d 845, 274 Cal. Rptr. 678 (1990). And in a case primarily decided on ripeness grounds, attorneys were denied standing to sue on behalf of clients who wished to enter into surrogate parenting arrangements to challenge

assert the rights of city workers; however, it is likely that the suit could proceed as a public action under modern cases. The prevailing wage law might be considered as one that created public rights and duties.

65.     This analysis was drawn from federal cases. For example, a physician is permitted to sue on behalf of patients who assert that a state statute denies the patient's right to obtain an abortion; a vendor is permitted to assert the rights of buyers penalized by an unconstitutional statute. Singleton v. Wulff, 428 U.S. 106 (1976); Craig v. Boren, 429 U.S. 190 (1976). See generally L. Tribe, American Constitutional Law § 3-19 (2d ed. 1988).

66.     216 Cal. App. 3d 271, 264 Cal. Rptr. 499 (1989). Similarly, see Drum v. Fresno County Dep't of Pub. Works, 144 Cal. App. 3d 777, 783-84, 192 Cal. Rptr. 782 (1983). See also the leading California case of Board of Social Welfare v. County of Los Angeles, 27 Cal. 2d 98, 100, 162 P.2d 627 (1945), allowing a state social welfare agency to sue a county on behalf of welfare recipients "who are … ordinarily financially, and often physically, unable to maintain such proceedings on their own behalf."

cess (although it did not deprive the city of due process); therefore the first criterion of inextricable relationship was met. Secondly, the landowners would have difficulty bringing the suit since they were never notified of the development until it was too late to challenge it.

There may be cases in which *B* cannot meet these tests. In many such cases, however, *B* could probably sue under the public rights approach discussed above where the courts require no personal stake at all.

## B. RECOMMENDATIONS

A statute should codify standing law, which is now mostly in relatively inaccessible and somewhat confusing case law and fragmentary and misleading statutes.[41] I suggest working with the provision in the Model Act[42] but adding provisions on public actions and pruning the parts of the statute that incorporate inappropriate and unsatisfactory federal standing rules.

### 1. Private Interest.

The MSAPA section provides standing to a person to whom the agency action is specifically directed and to a person who was a party to the agency proceedings that led to the agency action. It also provides standing to "a person eligible for standing under another provision of law."[43] These subsections seem appropriate and reflect existing California law.

The MSAPA provides that "if the challenged agency action is a rule, a person subject to that rule" has standing to seek review of the rule.[44] This would change existing California law that, with some exceptions, requires a person challenging a rule to have been a party to the rulemaking proceeding.[45] As discussed above, I believe that the existing rule is unnecessary. The related exhaustion of remedies rule requiring that the particular issue that is the subject of the challenge be raised at the administrative level makes sense, but there is little reason to require that the particular plaintiff have been involved in the rulemaking proceeding.

The MSAPA then provides that "a person otherwise aggrieved or adversely affected by the agency action" has standing to challenge it. "For purposes of this paragraph, no person has standing as one otherwise aggrieved or adversely affected unless: (i) the agency action has prejudiced or is

---

[41] . For example, Section 526a, relating to taxpayer actions, appears to cover only actions against local government, yet it has been expanded to cover actions against the state.

[42] . MSAPA § 5-106.

[43] . *Id.* § 5-106(a)(1), (2), (4).

[44] . *Id.* § 5-106(a)(3).

[45] . See *supra* text accompanying notes 24-28.

likely to prejudice that person...."[46] This adequately states the "private interest" standard, which is well developed in existing California law.[47] The MSAPA then goes on to add the zone of interests, causation, and remediability requirements of federal law,[48] which I strongly urge that California not adopt.[49]

The statute should make clear that it preserves existing law about the right of associations to sue on behalf of any of their members who can meet the private interest standard.[50] This idea should be expressed in statutory language.

The statute should also preserve the *jus tertii* rule — the right of third parties to assert the rights of persons who meet the private interest standard.[51] Here the standard is so vague that it might be difficult to write a statute on it. Perhaps the *jus tertii* rule can be the subject of a comment to the section stating that prior law is preserved, together with a few citations to existing cases that articulate that law. Finally, the statute or a comment should make clear the local government has standing to sue the state on any legal theory.[52]

## 2. Public Interest and Taxpayer Suits

Because it seems to be based on federal law, the MSAPA standing provision does not allow standing to taxpayers or to persons asserting public interest claims. I believe California law on these points is working well and should be preserved.

However, it seems to me that taxpayer actions should be dispensed with. If there is a generous public interest type standard, what is the need for the separate taxpayer action? The case law has expanded taxpayer actions to the point that their conceptual basis (arising out of harm to the long-suffering taxpayer) seems rather silly. As we have seen, a taxpayer can seek to enjoin any action by government whether it involves spending funds or not, or even if the activity is a money-maker. Any action that involves paid staff to implement falls within the domain of taxpayer standing — and obviously this includes every possible action by government. Who cares, at this point, whether the plaintiff is a taxpayer or not?

Besides, some aspects of taxpayer standing under existing law seem dubious. I do not believe that there should be an action for "waste" of taxpayer funds; if there is no basis for claiming illegality of the action or expenditure, the courts should not intervene. An action for "waste" provides too great an inducement for harassing lawsuits that raise essentially political issues. Moreover, I do not believe that there should be personal liability of government officials for administrative action that proves to be invalid, whether or not such action meets the due care

---

[46]. MSAPA § 5-106(a)(5).

[47]. Note again that the MSAPA does not require that the person have been a party to the action below, whether it is quasi-legislative or quasi-judicial. I believe this change is appropriate.

[48]. MSAPA § 5-106(a)(5)(ii), (iii).

[49]. Probably the section can be simplified by leaving out the language about "otherwise aggrieved or adversely affected," leaving only a residual section on private interest for agency action that "prejudiced or is likely to prejudice" the plaintiff. This seems adequate to capture any sort of practical or legal harm and thus meets the California standards that the plaintiff be hurt in some way that distinguishes him from the general public.

[50]. See *supra* text accompanying notes 21-22.

[51]. See *supra* text accompanying notes 64-66.

[52]. See *supra* text accompanying notes 30-32.

standard developed in existing law.[53] Such liability runs contrary to the policies behind the tort claims act.[54]

Instead, it seems sensible to fold the taxpayer action into a generic public interest standard.[55] Such a standard would allow a plaintiff to challenge action of state or local government on the ground that such action is contrary to law. Such law could be expressed in the state or federal constitution, a statute, a regulation, or even in judicial decisions. However, the law in question must be one that a court believes was intended to benefit the general public or a large segment of the general public, as opposed to a narrow private interest. The law might, for example, be one that imposes environmental controls or controls on the political process. It might be a tax law that is being erroneously interpreted to create a loophole. It might be a benefit statute intended to relieve poverty. The bounds of the public interest statute cannot be expressed by any statutory formula and must evolve case by case. I leave it to the staff to figure out exactly how such a provision should be drafted.[56]Perhaps a comment stating that the Legislature approves of existing law (illustrated by a few citations) would be sufficient.

## II. TIMING OF JUDICIAL REVIEW

Various doctrines control the timing of judicial review; if applicable, these doctrines require a delay of judicial involvement in resolving the dispute. At present, none of the doctrines are statutory and several overlap. In many respects, the case law is confusing and inconsistent. Codification and clarification of these doctrines and their various exceptions would be helpful.

A. EXHAUSTION OF ADMINISTRATIVE REMEDIES

**1. Existing California Law**

The requirement that a party exhaust administrative remedies before seeking judicial review has been heavily litigated in California.[57]

Unless an exception to the rule is applicable, a litigant must fully complete all federal,[58] state and local administrative remedies before coming to court or defending against administrative

---

[53] . See *supra* note 59.

[54] . See California Government Liability Tort Practice §§ 2.89-2.91, at 17073, §§ 6.143-6.156, at 863-79 (Cal. Cont. Ed. Bar, 3d ed. 1992). In general, in all but very unusual cases, a public entity must provide a defense for public employees and must indemnify such employees against any liability for jobrelated acts. Thus the Legislature is committed to a regime in which public employees are not subject to personal liability.

[55] . Taxpayer suits have functionally become citizen suits. Note, 69 Yale L.J. 895, 906 (1960).

[56] . See *supra* note 50, suggesting use of language in Section 1021.5.

[57] . For general treatments of exhaustion under California law, see Comment, *Exhaustion of Administrative Remedies in California*, 56 Cal. L. Rev. 1061 (1968); California Administrative Mandamus ch. 2 (Cal. Cont. Ed. Bar, 2d ed. 1989); 3 B. Witkin, California Procedure *Actions* §§ 308-23, at 392-415 (4th ed. 1996); 2 G. Ogden, California Public Agency Practice § 51.02 (1992).
This section of the study does not consider the rule that a failure to exhaust *judicial* remedies under Section 1094.5 establishes the propriety of the administrative action under the doctrine of administrative res judicata. See, e.g., Knickerbocker v. City of Stockton, 199 Cal. App. 3d 235, 244 Cal. Rptr. 764 (1988). This section concerns only exhaustion of administrative remedies.

[58] . Acme Fill Corp. v. San Francisco Bay Cons. & Dev. Comm'n, 187 Cal. App. 3d 1056, 1064, 232 Cal. Rptr. 348 (1986) (exhaustion of federal remedy before suing in state court).

enforcement.[59] The doctrine applies even though a litigant contends that an agency has made a legal error, for example by wrongfully taking jurisdiction over the case or by denying benefits to the litigant or by failing to follow its own procedural rules.[60]

The exhaustion rule applies whenever a process exists whereby an unfavorable agency decision might be challenged within that agency or another agency.[61] The rule applies to the review of state or local agency actions that might be deemed quasi-legislative,

---

[59] . South Coast Regional Comm'n v. Gordon, 18 Cal. 3d 832, 135 Cal. Rptr. 781 (1977) (failure to exhaust remedies precludes raising defenses against enforcement); People v. Coit Ranch, Inc., 204 Cal. App. 2d 52, 57-58, 21 Cal. Rptr. 875 (1962) (same).

[60] . Bollengier v. Doctors Medical Ctr., 222 Cal. App. 3d 1115, 1126-32, 272 Cal. Rptr. 273 (1990).

[61] . However, that process must be one provided by regulation or statute that furnishes clearly defined machinery for submission, evaluation, and resolution of the dispute. See *infra* text accompanying note 116.

quasi-administrative or ministerial, as well as quasi-judicial.[88] It requires not only that every procedural avenue be completely exhausted,[62] but also that the exact issue that the litigant wants the court to consider have been raised before the agency.[63] It applies even though the administrative remedy is no longer available; in such cases, of course, dismissal because of a failure to exhaust is equivalent to denying judicial review altogether.

In California, unlike federal law, there is no separate "final order" rule.[64] If the decision being challenged is not final, the court

---

88. Redevelopment Agency of the County of Riverside v. Superior Court, 228 Cal. App. 3d 1487, 1492, 279 Cal. Rptr. 558 (1991) (whether adoption of redevelopment plan is quasi-legislative or quasi-administrative, exhaustion rule applies); Lopez v. Civil Serv. Comm'n, 232 Cal. App. 3d 312, 283 Cal. Rptr. 447 (1991) (exhaustion applies to all forms of mandate and applies even though plaintiff seeks ministerial rather than quasi-judicial action by agency).
    But see City of Coachella v. Riverside County Airport Land Use Comm'n, 210 Cal. App. 3d 1277, 1287-88, 258 Cal. Rptr. 795 (1989), involving objections to a land use plan adopted by a local agency. The objector failed to appear at a legally required public hearing. The court held that appearance at the hearing was not a remedy that must be exhausted, since the agency was not required to do anything in response to submissions at the hearing. I regard the latter decision as probably incorrect; the public hearing was obviously intended for the purpose of allowing the public to raise questions about the planning decision and for the agency to consider and respond to such questions.

will dismiss under the exhaustion of remedies rule, unless an exception to the exhaustion doctrine applies.[92] I have not suggested any change in this practice since the analysis of whether a decision is a "final order" and whether a litigant has "exhausted administrative remedies" are so similar. It would probably create more confusion than clarity to try to separate them.

### a. Purposes and costs of the exhaustion doctrine

The purposes of the exhaustion requirement have often been spelled out.[93] Essentially, there are two rationales for the exhaustion rule.

The first rationale for exhaustion arises out of a pragmatic concern for judicial efficiency. Judicial proceedings are more efficient if piecemeal review can be avoided. The quality of review is enhanced if a court can start with a complete factual record produced at the agency level. Moreover, it is helpful to a court if an expert agency has resolved the same issue that the court must deal with. Finally, a litigant may succeed before the agency or the case may be settled; thus the court can avoid ever having to decide the case at all.

The second purpose of exhaustion is based on separation of powers; the agencies of state and local government are a separate branch of government and their autonomy must be respected. This purpose is furthered by allowing an agency to apply its expertise to the problem and to correct its own mistakes before it is haled into court. Moreover, if exhaustion were not required, litigants

---

62 . Lopez v. Civil Serv. Comm'n, 232 Cal. App. 3d 312, 283 Cal. Rptr. 447 (1991) (must raise issue at every stage of the administrative process); Edgren v. Regents of Univ. of Cal., 158 Cal. App. 3d 515, 205 Cal. Rptr. 6 (1984) (litigant who withdrew during a hearing, complaining of due process violations in the way the hearing was being conducted, failed to exhaust remedies).
    There appears to be an exception to the requirement that the objection be raised at every possible stage in the case of land use planning; it is sufficient to raise an objection before the "lead agency" but not before the planning commission. Browning-Ferris Ind. v. San Jose City Council, 181 Cal. App. 3d 860, 226 Cal. Rptr. 575 (1986).

63 . The exact issue rule is discussed *infra* in text accompanying notes 10003.

64 . Section 1094.5 provides for review of any "final administrative order or decision" arising out of a hearing. Most decisions have dismissed applications for mandamus to review non-final orders because of a failure to exhaust remedies (as distinguished from a separate final order rule). Some cases have treated finality as a distinct reason to dismiss applications under Section 1094.5. Kumar v. National Medical Enters., 218 Cal. App. 3d 1050, 267 Cal. Rptr. 452 (1990)

---

would have an incentive to short-circuit agency processes and avoid an agency decision to which a court would give deference. Such end

---

(only final order from appellate body of hospital can be appealed under Section 1094.5); Board of Medical Quality Assurance v. Superior Court, 73 Cal. App. 3d 860, 141 Cal. Rptr. 83 (1977) (Section 1094.5 action filed for purpose of taking deposition in a pending administrative action dismissed because of the lack of a final order).

92.   Bollengier v. Doctors Medical Ctr., 222 Cal. App. 3d 1115, 1125, 272 Cal. Rptr. 273 (1990).

93.   See, e.g., McCarthy v. Madigan, 112 S. Ct. 1081, 1086-87 (1992); Rojo v. Klieger, 52 Cal. 3d 65, 82-85, 276 Cal. Rptr. 130 (1990).

runs are contrary to the Legislature's intention in creating those agencies.

While the exhaustion doctrine serves valuable public purposes, the requirement can be very costly to litigants. The exhaustion doctrine requires them to resort to agency remedies they believe are almost certainly useless. Where a private litigant ultimately prevails in court, but has first been required to exhaust administrative remedies, the effect of the doctrine is to delay ultimate resolution of the case, perhaps for years. It also requires the expenditure of substantial, perhaps crushing, professional fees. Indeed, exhaustion of remedies often means exhaustion of litigants. In many cases, the remedy in question is no longer available by the time the case comes to court; in such cases, requiring exhaustion means that the case is over and the private litigant has lost.

*b. Doctrine is jurisdictional*

One notable aspect of the California exhaustion rule is that it is jurisdictional, not discretionary. At the federal level and in most states, exhaustion of remedies is discretionary unless a specific statute requires exhaustion, in which case it is treated as jurisdictional.[65]

The rule that exhaustion is jurisdictional derives from the leading California case, *Abelleira v. District Court of Appeal*.[66] In *Abelleira*, an administrative judge held that employees were entitled to unemployment benefits despite a statutory rule precluding payment of benefits in cases where unemployment was caused by a strike. The employer appealed to higher agency authority. While that appeal was pending, the employer sought judicial review of the ALJ's decision. The employer argued that immediate review should be available, notwithstanding its failure to exhaust remedies, because the statute required payment of benefits to the employees pending the administrative appeal. The employer claimed that such immediate and unlawful payments would deplete the benefit fund. The court of appeal held that immediate judicial review was available.[96] An employee sought a writ of prohibition in the California Supreme Court.

The Court granted the writ. In order to do so, it had to label the exhaustion requirement as jurisdictional since prohibition would not lie to correct an abuse of discretion by the lower court. Its sweeping opinion emphatically endorsed the exhaustion doctrine, and its peremptory rejection of possible exceptions committed California courts to a policy of relatively rigid enforcement of the doctrine.

Since *Abelleira*, both the Supreme Court and lower courts have often countenanced exceptions to the exhaustion requirement. However, the rule that exhaustion is jurisdictional constrains the

---

[65] . See McCarthy v. Madigan, 112 S. Ct. 1081 (1992).

[66] . 17 Cal. 2d 280, 102 P.2d 329 (1941).

ability of lower courts to recognize new exceptions or broaden the existing ones or to excuse a lack of exhaustion based on a balancing of factors.[97] In contrast, federal cases often excuse exhaustion

---

96.    A federal court would not have treated *Abelleira* as an exhaustion case but as a final order case. In *Abelleira*, the employer was protesting against the immediate payment of benefits to the employee which occurred after the initial decision. Insofar as preventing that payment was concerned, the employer had exhausted its remedy when it lost at the initial hearing. The appeal to the agency heads was not a remedy that could have prevented immediate payment of benefits.

However, the order in question was not final and would not be final until the agency heads had acted on the employer's appeal. See FTC v. Standard Oil Co., 449 U.S. 232 (1980) (litigant had exhausted remedy with respect to particular issue but still could not appeal a non-final order). *Abelleira* would have been a weak case for an exception to the final order rule. The employer was not seriously harmed by the immediate payment of benefits since its reserve account would be credited if it were ultimately successful in the case. On the other hand, the unemployed workers obviously needed their payments immediately, not at the end of protracted litigation.

California law has no separate final order rule for administrative action. As in *Abelleira*, the exhaustion doctrine is used to preclude appeals of non-final orders.

97.    A few California cases use a flexible, balancing analysis to decide whether to excuse a failure to exhaust remedies. See Doster v. County of San Diego, 203 Cal. App. 3d 257, 251 Cal. Rptr. 507 (1988); Hull v. Cason, 114 Cal. App. 3d 344, 359, 171 Cal. Rptr. 14 (1981) (public interest demands court take case which had already been litigated for several years despite failure to exhaust remedies); Hollon v. Pierce, 257 Cal. App. 2d 468, 64 Cal. Rptr. 808 (1964);

by determining whether the purposes of the exhaustion rule would be frustrated if an exception were to be allowed in the particular case in light of the costs that exhaustion would impose on the particular litigant.

In addition, according to some cases, the rule that exhaustion is jurisdictional means that the exhaustion objection cannot be waived by agreement[98] or by failure to make the objection at the appropriate time; instead, it can be initially raised at any time, even on appeal.[67]

*c. The "exact issue" rule*

One important corollary to the exhaustion of remedies rule requires that the exact issue to be considered by a reviewing court have been presented to the agency during the course of its consideration of the matter.[68][69] Thus a person can be precluded from rais-

---

[67] . Hittle v. Santa Barbara County Employees Retirement Ass'n, 39 Cal. 3d 374, 384, 216 Cal. Rptr. 733 (1985); People v. Coit Ranch, Inc., 204 Cal. App. 2d 52, 57, 21 Cal. Rptr. 875 (1962). This rule is in some doubt, however. See Green v. City of Oceanside, 194 Cal. App. 3d 212, 219-23, 239 Cal. Rptr. 470 (1987), rejecting an exhaustion defense raised for the first time on appeal. The court pointed out persuasively that it would be grossly unfair for defendant to ignore this procedural defense and put plaintiff to expense of trial, knowing it could assert the exhaustion defense on appeal if it lost at trial.

[68] . See, e.g., Resource Defense Fund v. Local Agency Formation Comm'n,

[69] Cal. App. 3d 886, 894, 236 Cal. Rptr. 794, 798 (1987); Coalition for Student Action v. City of Fullerton, 153 Cal. App. 3d 1194, 200 Cal. Rptr. 855 (1984). CEB calls this doctrine the requirement of preserving issues at the administrative hearing. California Administrative Mandamus §§ 2.2-2.24, at 36-48 (Cal. Cont. Ed. Bar, 2d ed. 1989). The exact issue rule has been codified in cases brought under the California Environmental Quality Act. Pub. Res. Code § 21177(a).

The exact issue rule is often quite strictly applied. Thus specific environmental objections to a timber harvesting plan were not raised before the agency by preprinted form objections raising various environmental and political concerns because these related to logging generally without being specific to the project under review. Albion River

*Greenblatt v. Munro*, 161 Cal. App. 2d 596, 605-07, 326 P.2d 929 (1958). This approach is probably contrary to *Abelleira*.

98. *Noonan v. Green*, 276 Cal. App. 2d 25, 80 Cal. Rptr. 513 (1969); *Buchwald v. Superior Court*, 254 Cal. App. 2d 347, 359-60, 62 Cal. Rptr. 364 (1967).

ing a particular issue or defense, even though every possible[70] administrative remedy was exhausted, because the particular issue was not pressed before the agency.[71] It appears, however, that unlike the exhaustion doctrine, the exact issue doctrine is not jurisdictional;[72] therefore, it probably can be waived by the agency. Apparently the same exceptions that apply to the general exhaustion rule also apply to the exact issue rule.

The exact issue rule makes good sense. In judicial efficiency terms, it is important that the issue be raised below so that a complete record can be created at the agency level and so that the agency can apply its expert judgment to that issue. Particularly in local land use planning, the issues often concern complex urban planning, timber management, and environmental policy problems. Thus preliminary consideration by the agency is very helpful to reviewing courts. In separation of powers terms, it is appropriate that courts require the presentation of issues to agencies; otherwise litigants would be encouraged to sidestep preliminary agency consideration, to which a court ordinarily owes considerable deference, in the hope of getting a better shake from the court reviewing the issue de novo.[73]

*d. Exceptions to exhaustion*

The exceptions to the exhaustion doctrine have been heavily litigated. These exceptions can be grouped under two broad headings: inadequacy of the remedy and irreparable injury. Under inadequacy of the remedy fall the accepted exceptions for futility, inadequate remedy, certain constitutional issues, and lack of notice.[74] *i. Futility.*

If it is positively clear that the agency will not grant the requested relief, the remedy would be considered inadequate because it is futile.[75] However, the exhaustion requirement is not excused merely because favorable agency action is unlikely. If courts excused exhaustion merely because favorable agency action is unlikely, the exhaustion requirement would practically disappear, since litigants usually go to court prematurely only when they feel there is little chance that they will prevail at the agency level.[76] Moreover, the exception is not applicable even though the remedy is

---

*Watershed Protection Ass'n v. Department of Forestry*, 235 Cal. App. 3d 358, 286 Cal. Rptr. 573, 580-88 (1991). But see *Citizens Ass'n for Sensible Dev. v. County of Inyo*, 172 Cal. App. 3d 151, 163,
[70] Cal. Rptr. 893 (1985) (less specificity required to preserve issue in administrative than in judicial proceeding since parties often not represented by counsel).

[71] . Indeed, a mere perfunctory or "skeleton" presentation is insufficient if it is seen as a ruse for transferring the issue from the agency to the court. See *Dare v. Board of Medical Examiners*, 21 Cal. 2d 790, 799, 136 P.2d 304 (1943); *City of Walnut Creek v. County of Contra Costa*, 101 Cal. App. 3d 1012, 162 Cal. Rptr. 224 (1980).

[72] . See *Greenblatt v. Munro*, 161 Cal. App. 2d 596, 605-07, 326 P.2d 929 (1958).

[73] . *City of Walnut Creek v. County of Contra Costa*, 101 Cal. App. 3d 1012, 162 Cal. Rptr. 224 (1980).

[74] . The exception for local tax assessments alleged to be a nullity is anomalous. In addition, the existing APA contains a questionable exception for denial of continuances. See *infra* text accompanying note 142. The California Supreme Court also decided to hear a case despite a failure to raise the exact issue where public policy required that the issue be immediately resolved. *Lindeleaf v. Agricultural Labor Relations Bd.*, 41 Cal. 3d 861, 870-71, 226 Cal. Rptr. 119 (1986).

[75] . *Ogo Assocs. v. City of Torrance*, 37 Cal. App. 3d 830, 112 Cal. Rptr. 761 (1974).

[76] . *Doyle v. City of Chino*, 117 Cal. App. 3d 673, 683, 172 Cal. Rptr. 844 (1981).

no longer available at the time a litigant seeks judicial review, unless the litigant can establish positively that the remedy would have been useless if it had been availed of.[77]

The futility exception is based upon a balance of the purposes of the exhaustion rule against the costs of enforcing it. Forcing a litigant to pursue the remedy serves judicial efficiency and recognizes the agency's role under the separation of powers. Yet it becomes difficult to justify imposing the costs of exhaustion on a litigant when it is certain that those costs will be wasted. Therefore, litigants must pursue probably unavailing remedies but need not pursue certainly unavailing ones.

In the leading case on the futility exception, a developer was excused from applying for a variance from a zoning scheme when that scheme was enacted for the purpose of blocking the very project the developer wanted to build.[108] Similarly, if agency memoranda[109] or a prior decision involving the same litigant[110] indicate that the decision in the particular case is absolutely certain to go against the litigant, he need not exhaust remedies. However, the fact that an agency has previously decided a string of cases on the same legal issue in a way adverse to the litigant's position is not sufficient;[78] the agency might be willing to distinguish its prior cases.[79]

---

108.   Ogo Assocs. v. City of Torrance, 37 Cal. App. 3d 830, 112 Cal. Rptr. 761 (1974).

109.   Truta v. Avis Rent a Car Systems, Inc., 193 Cal. App. 3d 802, 812, 238 Cal. Rptr. 806, 811 (1987); *In re* Thompson, 52 Cal. App. 3d 780, 125 Cal. Rptr. 261, 263 (1975).

110.   Elevator Operators Union v. Newman, 30 Cal. 2d 799, 811, 186 P.2d 1, 7 (1947) (discharge of employee — union board had already rejected appeal from discharge decision and would certainly reject a damage claim based on same discharge); Breaux v. Agricultural Labor Relations Bd., 217 Cal. App. 2d 730, 743, 265 Cal. Rptr. 904, 910 (1990) (futile to question settlement before agency that had already approved it).

Some cases have stretched the futility doctrine. They have excused a failure to exhaust where the agency's initial response seemed hostile and unyielding,[113] where the agency disclaimed jurisdiction,[80] or where it seemed unlikely the decisionmaker would change his mind.[81] It would

---

77 . George Arakelian Farms v. Agricultural Labor Relations Bd., 40 Cal. 3d 654, 662-63, 221 Cal. Rptr. 488, 493 (1985) (failure to make timely request for agency review precludes judicial review — inadequate showing that review would be futile).

78 . Gantner & Mattern Co. v. California Employment Comm'n, 17 Cal. 2d 314, 317, 104 P.2d 932, 934 (1947); Westinghouse Elec. Corp. v. County of Los Angeles, 42 Cal. App. 3d 32, 39-40, 116 Cal. Rptr. 742, 747 (1974); City of Los Angeles v. California Towel & Linen Supply, 217 Cal. App. 2d 410, 420, 31 Cal. Rptr. 832 (1963); Virtue Bros. v. County of Los Angeles, 239 Cal. App. 2d 220, 232, 48 Cal. Rptr. 505 (1966).

79 . See Yamaha Motor Corp. U.S.A. v. Superior Court, 185 Cal. App. 3d 1232, 1242, 230 Cal. Rptr. 382, 387 (1986). This case concerned the breach of a franchise agreement by refusing to supply a dealer with a new product line offered to other dealers. The New Motor Vehicle Board had decided a case involving the identical product line but a different dealer. The court required exhaustion since the Board might distinguish the prior case for reasons specific to this particular dealer, like the size of the dealership and financial impact.
  Similarly, the fact that the agency previously decided other issues in the same case in a way contrary to the plaintiff's position does not mean that it would not fairly consider the issues currently presented. Sea & Sage Audubon Soc'y, Inc. v. Planning Comm'n, 34 Cal. 3d 412, 418-19, 194 Cal. Rptr. 357 (1983).

80 . Department of Personnel Admin. v. Superior Court, 5 Cal. App. 4th 155, 6 Cal. Rptr. 2d 714, 721-22 (1992).

81 . Doster v. County of San Diego, 203 Cal. App. 3d 257, 261-62, 257 Cal. Rptr. 507, 509-10 (1988). This case employs a flexible balancing analysis in order to decide whether to excuse a deputy sheriff's failure to request a hearing within the five-day time period allowed by local ordinance. One factor in favor of excusing it was that a factual record compiled at an earlier hearing already existed. Considering the unlikelihood that the sheriff would

seem that the more flexible futility test in these cases runs afoul of the stern *Abelleira* rule that exhaustion is jurisdictional, not a matter of judicial discretion. *ii. Inadequate remedies.*

In addition to cases in which the administrative remedy is considered futile, remedies can be considered inadequate for other reasons and thus need not be exhausted. Thus a procedure that provides no clearly defined machinery for the submission, evaluation, and resolution of complaints is inadequate.[82] One rather problematic application of this doctrine occurs where the subject matter

---

113. Grier v. Kizer, 219 Cal. App. 3d 422, 432, 268 Cal. Rptr. 244, 249 (1990) (unyielding position that regulation was validly adopted); Jacobs v. State Bd. of Optometry, 81 Cal. App. 3d 1022, 1030, 147 Cal. Rptr. 225, 229 (1978) (dismissive reply to inquiry); Police Officers Ass'n v. Huntington Beach, 58 Cal. App. 3d 492, 498-99, 126 Cal. Rptr. 893, 897-98 (1976) (hostile response to grievance plus position in lower court); *In re* Faucette, 253 Cal. App. 2d 338, 343, 61 Cal. Rptr. 97, 99 (1967) (failure to fully consider initial application means further administrative recourse is futile).

---

of the controversy lies outside the agency's jurisdiction.[117] This subject matter rule applies to cases in which the jurisdictional error appears clearly and positively on the face of the pleadings and does not depend on any disputed factual matters.[83] Unless cautiously applied, this exception could be broadened to cover any alleged agency error of law.

Similarly, a remedy might be inadequate because of a lack of minimally adequate notice[84] or other necessary procedure.[85] If the procedure in question cannot furnish any of the relief sought by plaintiff, or an acceptable substitute for that relief, it is not adequate.[86] If agency action has ground to a halt or the agency is

---

117. County of Contra Costa v. State, 177 Cal. App. 3d 62, 73, 222 Cal. Rptr. 750, 758 (1986) (dictum). The problem of an agency lacking subject matter jurisdiction is more likely to arise in a primary jurisdiction case. See County of Alpine v. County of Tuolumne, 49 Cal. 2d 787, 322 P.2d 449 (1958).

This rule was misapplied in Richman v. Santa Monica Rent Control Bd., 7 Cal. App. 4th 1457, 9 Cal. Rptr. 2d 690, 693 (1992), to excuse a litigant's failure to comply with the exact issue rule by failing to raise a question of law before the agency. The court thought that the agency had no jurisdiction to deal with a question of law since this was

---

change his mind and the existence of a factual record, the court decided that it should reach the narrow legal question involved.

[82] . Common Cause v. Board of Supervisors, 49 Cal. 3d 432, 443, 261 Cal. Rptr. 574 (1989) (plaintiff not required to petition Secretary of State to adopt regulations); Endler v. Schutzbank, 68 Cal. 2d 162, 168, 65 Cal. Rptr. 297 (1968) (where agency retained discretion to ignore decision, procedure was inadequate — heads-I-win-tails-you-lose); Rosenfield v. Malcolm, 65 Cal. 2d 559, 55 Cal. Rptr. 595 (1967) (remedy of instituting an investigation not adequate to deal with plaintiff's claim of illegal discharge).

[83] . See, under federal law, Leedom v. Kyne, 358 U.S. 184 (1958) (agency lacked jurisdiction to order inclusion of non-professionals in bargaining unit of professionals — error apparent on face of pleadings).

[84] . Horn v. County of Ventura, 24 Cal. 3d 605, 156 Cal. Rptr. 718 (1979).

[85] . Superior Strut & Hanger Co. v. Port of Oakland, 72 Cal. App. 3d 987, 1002, 140 Cal. Rptr. 515 (1977) (procedure provided for no testimony, no factfinding determination, no opportunity to be heard); Bollengier v. Doctors Medical Ctr., 222 Cal. App. 3d 1115, 1128-29, 272 Cal. Rptr. 273, 279 (1990) (hospital's procedure provided adequate notice and minimal standards of fair procedure); Tiholiz v. Northridge Hosp. Found., 151 Cal. App. 3d 1197, 199 Cal. Rptr. 338 (1984) (same).

[86] . Ramos v. County of Madera, 4 Cal. 3d 685, 691, 94 Cal. Rptr. 421, 425 (1971) (welfare fair hearings not equipped to deal with class actions or provide money damages); Tiernan v. Trustees of the Cal. State Univ. & Colleges, 33 Cal. 3d 211, 217, 188 Cal. Rptr. 115, 119 (1982) (procedure adequate to deal with claim of discharge infringing first amendment rights but not for claim that university must enact new regulations); Glendale City Employees' Ass'n, Inc. v.

a matter for the courts. While the courts may have power to independently decide a question of law, it does not at all follow that an agency lacks jurisdiction to make the initial call on such a question. Consequently, it is inappropriate to excuse a failure to raise the issue before the agency.

unreasonably delaying resolution of the issue or has refused to take jurisdiction over it, is unfair to expect a litigant to resort to that remedy.[122] It is possible that an excessive fee for invoking a remedy could render the remedy inadequate, but plaintiff has the burden to establish that it sought a fee waiver and, if waiver is denied, that the fee is unreasonable.[123]

---

City of Glendale, 15 Cal. 3d 328, 342, 124 Cal. Rptr. 513, 523 (1975) (procedure handles individual cases, not complex dispute involving interpretation of memorandum of agreement); Horsemen's Benevolent & Prof. Ass'n v. Valley Racing Ass'n, 4 Cal. App. 4th 1538, 6 Cal. Rptr. 2d 698 (1992) (board cannot award money damages — remedy inadequate); Mounger v. Gates, 193 Cal. App. 3d 1248, 1256, 239 Cal. Rptr. 18, 23 (1987) (administrative appeal cannot remedy violation of procedural rights). At the federal level, see McCarthy v. Madigan, 112 S. Ct. 1081, 1091 (1992) (plaintiff sought only money damages which administrative procedure could not provide).

However, other California cases do require exhaustion of remedies even if the administrative procedure may not resolve all issues or provide the precise relief requested. Acme Fill Corp. v. San Francisco Bay Cons. & Dev. Comm'n, 187 Cal. App. 3d 1056, 1064, 232 Cal. Rptr. 348 (1986) (agency could not provide declaration that statute inapplicable to plaintiff); Edgren v. Regents of Univ. of Cal., 158 Cal. App. 3d 515, 520, 205 Cal. Rptr. 6, 9 (1984) (exhaustion of University's personnel remedies required even though plaintiff seeks damages in tort). These cases are questionable after Rojo v. Klieger, 52 Cal. 3d 65, 276 Cal. Rptr. 130 (1990) (exhaustion not required where agency cannot provide compensatory damages), overruling Westlake Community Hosp. v. Superior Court, 17 Cal. 3d 465, 131 Cal. Rptr. 90 (1976). However, Rojo involves primary jurisdiction rather than exhaustion of remedies.

It is difficult to generalize about the problem of misfitting remedies; sometimes exhaustion is required, sometimes not.

122.    See McCarthy v. Madigan, 112 S. Ct. 1081. 1087 (1992); Kirkpatrick v. City of Oceanside, 232 Cal. App. 3d 267, 277, 283 Cal. Rptr. 191, 197 (1991) (stonewalling); Department of Personnel Admin. v. Superior Court, 5 Cal. App. 4th 155, 6 Cal. Rptr. 2d 714, 718-22 (1992) (agency declined to take jurisdiction); Los Angeles County Employees Ass'n v. County of Los Angeles, 168 Cal. App. 3d 683, 686, 214 Cal. Rptr. 350 (1985) (procedure cannot furnish remedy in time to prevent injury to employees); Hollon v. Pierce, 257 Cal. App. 2d 468, 64 Cal. Rptr. 808 (1964).

123.    Sea & Sage Audubon Soc'y, Inc. v. Planning Comm'n, 34 Cal. 3d 412, 421-22, 194 Cal. Rptr. 357 (1983) (4-3 decision — dissent would place burden to establish reasonableness on agency).

### iii. Constitutional issues.

Certain types of constitutional claims can be raised in court without first exhausting administrative remedies. For example, exhaustion is generally excused in cases of an on-the-face constitutional challenge to a provision of the statute that creates the agency[124] or to the procedures the agency provides.[125] Probably the constitutional excuse should also apply to on-the-face constitutional challenges to agency regulations or to statutes that the agency is applying.[126]

---

124.    As the California Supreme Court remarked, "It would be heroic indeed to compel a party to appear before an administrative body to challenge its very existence and to expect a dispassionate hearing before its preponderantly lay membership on the constitutionality of the statute establishing its status and functions." State v. Superior Court, 12 Cal. 3d 237, 251, 115 Cal. Rptr. 497 (1974). See also Sail'er Inn v. Kirby, 5 Cal. 3d 1, 6, 95 Cal. Rptr. 329, 332 (1971); United States v. Superior Court, 19 Cal. 2d 189, 195-96, 120 P.2d 26 (1941) (dictum); Lund v. California State Employees Ass'n, 222 Cal. App. 3d 174, 183, 271 Cal. Rptr. 425 (1990); Chrysler Corp. v. New Motor Vehicle Bd., 89 Cal. App. 3d 1034, 1038-39, 153 Cal. Rptr. 135, 138 (1979).

125.   Horn v. County of Ventura, 24 Cal. 2d 605, 611, 156 Cal. Rptr. 718 (1979) (one need not exhaust defective remedies to challenge their sufficiency); Chevrolet Motor Div. v. New Motor Vehicle Bd., 146 Cal. App. 3d 533, 539, 194 Cal. Rptr. 270 (1983) (compliance with exact issue rule excused because attack is on constitutionality of Board's procedures).

It also appears that a litigant need not exhaust local remedies if those remedies are invalid under a state statute. See Professional Fire Fighters, Inc. v. City of Los Angeles, 60 Cal. 2d 276, 287, 32 Cal. Rptr. 830 (1963) (no need to exhaust local remedies where those remedies are rendered inapplicable to plaintiff because of state statutes); Friends of Lake Arrowhead v. San Bernardino County Bd. of Supervisors, 38 Cal. App. 3d 497, 505-08, 113 Cal. Rptr. 539 (1974) (state statute preempts remedy provision of local ordinance).

126.   See Vogulkin v. State Bd. of Educ., 194 Cal. App. 2d 424, 434-35, 15 Cal. Rptr. 194 (1961) (exhaustion not required for constitutional attack on statutes that agency is applying). This decision is correct. No distinction should be drawn between a challenge to the constitutionality of the statute that created the agency and a challenge to the constitutionality of statutes that the agency is enforcing.

However, this distinction (i.e., requiring exhaustion for constitutional attacks on statutes the agency is applying but not to attacks on the statute creating the agency) is supported by dictum from older cases. See United States v. Superior Court, 19 Cal. 2d 189, 195, 120 P.2d 26 (1941); Walker v. Munro, 178 Cal. App. 2d 67, 2 Cal. Rptr. 737 (1960); Tushner v. Griesinger, 171 Cal. App. 2d 599, 341 P.2d 416 (1959). As discussed in the text, since 1978 the California

The constitutional excuse makes sense, since an agency is extremely unlikely to uphold such challenges. Indeed, a provision of the California Constitution adopted in 1978 explicitly prohibits agencies from holding statutes unconstitutional.[87] Thus the constitutional exception really is a subset of the inadequate-remedy exception: agency procedures are not adequate to deal with an onthe-face constitutional challenge to statutes, regulations, or procedures.

The constitutional exception should not be broadened very far since many legal claims can be stated in constitutional terms.[88]For example, a litigant might argue that agency action is "irrational" or "unreasonable" so that it denies substantive due process. Similarly, a claim that a regulation is ultra vires could be articulated in terms of the constitutional separation of powers. Or a claimed defect in notice or an allegedly biased decisionmaker might be a violation of procedural due process.[89] If by making

Constitution has prohibited an agency from invalidating any statute on constitutional grounds. Consequently, it is futile to ask an agency to consider the constitutionality of any statute and the pre-1978 cases requiring exhaustion in cases challenging constitutionality of statutes the agency is applying should not be followed.

such claims litigant could avoid exhausting remedies, the requirement would nearly disappear. Therefore, these sorts of contrived constitutional claims are not sufficient to excuse a failure to exhaust.

---

[87] . The California Constitution (art. III, § 3.5) provides that no administrative agency (whether or not created by the California Constitution) can declare a statute unconstitutional or unenforceable on the basis of its being unconstitutional (unless an appellate court has already determined that the statute is unconstitutional). Similarly, an agency cannot declare a statute unenforceable on the basis that a federal statute or regulation prohibits its enforcement unless an appellate court has already so determined.

[88] . Some cases state restrictions on the constitutional exception that seem unnecessary. For example, a litigant should be able to get to court even though the litigant has already begun the administrative process; some cases indicate that the excuse is only available to people who have not begun availing themselves of that process. Eye Dog Found. v. State Bd. of Guide Dogs for the Blind, 67 Cal. 2d 536, 544, 63 Cal. Rptr. 21, 27 (1967).

[89] . The constitutional exception does not apply to a claim that the agency has misapplied otherwise valid procedural rules, even though the misapplication could be stated in constitutional terms. Bollenger v. Doctors Medical Ctr., 222 Cal. App. 3d 1115, 1127-28, 272 Cal. Rptr. 273 (1990). See Association of Nat'l Advertisers v. FTC, 627 F.2d 1151 (D.C. Cir. 1979), cert. denied, 447 U.S. 921

The constitutional exception does not apply to constitutional attacks on statutes or regulations based on their application to the particular facts (as distinguished from an on-the-face attack).[90] In many as-applied challenges, the agency remedy is adequate, since some sort of variance or waiver procedure is available to avoid harsh or unreasonable application of the law.[91] By the same token, the constitutional exception does not apply if material facts are in dispute and such facts must be found in order to resolve the constitutional dispute[92] nor does it apply to non-constitutional

(1980) (Leventhal, J. concurring) (improper to review bias claim absent final agency action).

    Another example of an attempt to turn a statutory claim into a constitutional one in order to avoid the exhaustion requirement occurred in County of Contra Costa v. State, 177 Cal. App. 3d 62, 74-75, 222 Cal. Rptr. 750, 758-59 (1986). This case involved the issue of whether statutes complied with the constitutional requirement that they reimburse local government for new state mandates. An agency (Board of Control) was created to adjudicate claims by local government that the Legislature had filed to comply with this mandate. The court correctly held that this remedy had to be exhausted, even though the local government plaintiffs stated their claim in constitutional terms. Clearly, the administrative remedy was wholly adequate for the purpose of dealing with plaintiff's claims.

claims involved in the same case.[93] Probably, the exception should not apply at all if there are both constitutional and nonconstitutional issues in the same case if an agency decision favorable to the litigant on a non-constitutional issue would dispose of the case. Such a decision would avoid the need for the court to reach the constitutional question at all.[94] And to excuse exhaustion in such a case would prolong the litigation since the petitioner will have to return to the agency to try the non-constitutional issues if he loses in court on the constitutional issues.

    *iv.    Lack of notice.*

Where a litigant failed to exhaust a remedy because he was not appropriately notified of its availability in time to use the remedy, the failure to exhaust is excused. This exception to exhaustion has been frequently recognized in local land use planning cases where persons affected by an application were not appropriately notified by either personal or constructive notice.[95] The exception should apply in such cases whether or not the plaintiff claims to be articulating the public

[90] . Security-First Nat'l Bank v. County of Los Angeles, 35 Cal. 2d 319, 217 P.2d 946 (1950) (exhaustion requirement); Griswold v. Mount Diablo Unified Sch. Dist., 63 Cal. App. 3d 648, 134 Cal. Rptr. 3 (1976) (exact issue requirement).

[91] . See Metcalf v. County of Los Angeles, 24 Cal. 2d 267, 148 P.2d 645 (1944); Mountain View Chamber of Commerce v. City of Mountain View, 77 Cal. App. 3d 82, 143 Cal. Rptr. 441 (1978). Indeed, it has been held that even an on-the-face attack is premature if the agency has a variance procedure that might solve the plaintiff's problem without reaching the constitutional question. Smith v. City of Duarte, 228 Cal. App. 2d 267, 39 Cal. Rptr. 524 (1964). However, this decision is questionable; generally a litigant is allowed to go to court with respect to constitutional claims even if he also has nonconstitutional defenses to raise before the agency.

[92] . Sail'er Inn v. Kirby, 5 Cal. 3d 1, 95 Cal. Rptr. 329 (1971) (dictum).

[93] . Flores v. Los Angeles Turf Club, 55 Cal. 2d 736, 746-48, 13 Cal. Rptr. 201 (1961).

[94] . However, if the objections were to the constitutionality of agency procedure, a litigant probably should not be required to exhaust illegal remedies even if those remedies might furnish substantive relief.

[95] . See Environmental Law Fund v. Town of Corte Madera, 49 Cal. App. 3d 105, 113, 122 Cal. Rptr. 282, 286 (1975). However, the exception does not apply where the planning authority has given notice to the community by publication as provided by statute. Sea & Sage Audubon Soc'y, Inc. v. Planning Comm'n, 24 Cal. 3d 412, 417, 194 Cal. Rptr. 357, 360 (1983); Redevelopment Agency of Riverside v. Superior Court, 228 Cal. App. 3d 1487, 279 Cal. Rptr. 558 (1991).

interest or its own private interest.[96] The exception should also apply whether the defect in question is a failure to have exhausted a remedy or a failure to have raised the exact issue before the agency.

Another variation of this exception has been recognized in adjudicatory cases where the agency failed to call a litigant's attention to an available administrative remedy and, under the facts, the litigant's failure to find out about the remedy is justifiable.[137]

    *v.*    *Irreparable injury.*

*Abelleira* recognized an irreparable injury exception to the exhaustion requirement but held that it was very narrow. The only situation of irreparable injury it accepted was a rate order that allegedly confiscated a utility's property by requiring it to operate unprofitably.[97] Later the Supreme Court applied the exception to a case in which a litigant claimed that by complying with state law it would violate a federal law and incur the risk of serious penalties.[98]

Subsequent cases have continued to be skeptical of irreparable injury claims[99] although there have been some exceptions.[100] At a

---

137. Hittle v. Santa Barbara County Employees Retirement Ass'n, 39 Cal. 3d 374, 384, 216 Cal. Rptr. 733 (1985); Westlake Community Hosp. v. Superior Court, 17 Cal. 3d 465, 478, 131 Cal. Rptr. 90, 97 (1976).

minimum, a plaintiff seeking an exception to a failure to exhaust remedies by reason of irreparable injury should show that the injury is truly irreparable (and goes far beyond the expense and bother of litigation), that the injury is imminent (as opposed to an injury that will occur in the future if the plaintiff loses before the agency), and that the litigant could not have obtained a stay at the administrative level.

    *vi. Local tax issues.*

Where a local tax assessment is alleged to be a "nullity" and there are no outstanding valuation issues, it is not necessary to exhaust the local tax dispute resolution remedy. An assessment might be a nullity, for example, where the property in question is tax exempt, nonexistent, or outside the taxing jurisdiction.[142] This exception seems out of line with the existing structure of exhaustion exceptions; I see no persuasive rationale for it. The local tax appeal process seems the ideal place

---

[96] . The court in *Corte Madera* justified the exception for lack of notice by stating that persons protecting the public interest should not be prevented from litigating land use decisions of which they had not been notified. Of course, in these cases, it is difficult to separate public interest from private interest and it should not matter.

[97] . In *Abelleira*, the dissenters argued that the irreparable injury standard was met because of harm to the public (as opposed to the plaintiffs). The alleged harm was that illegal payments to unemployed workers would drain the compensation fund. However, the majority focused only on the harm to the plaintiffs which was not compelling. Similarly, United States v. Superior Court, 19 Cal. 2d 189, 120 P.2d 26 (1941), held that loss to handlers who were unable to market all oranges they had purchased was not irreparable since they did not allege the order would destroy their business.

[98] . Sail'er Inn v. Kirby, 5 Cal. 3d 1, 7, 95 Cal. Rptr. 329, 332 (1971) (not clear whether court applied the irreparable harm or the inadequate remedy exception).

[99] . Mountain View Chamber of Commerce v. City of Mountain View, 77 Cal. App. 3d 82, 143 Cal. Rptr. 441 (1978) (plaintiff must apply for variance from sign removal ordinance even though maintenance of nonconforming sign could violate civil and criminal nuisance statutes since no such enforcement action was threatened).

[100] . Department of Personnel Admin. v. Superior Court, 5 Cal. App. 4th 155, 6 Cal. Rptr. 2d 714, 721 (1992) (impact on state budget and layoffs of state employees); Heyenga v. City of San Diego, 94 Cal. App. 3d 756, 156 Cal. Rptr. 496 (1979) (preliminary injunction against transfer of police officer pending administrative appeal); Greenblatt v. Munro, 161 Cal. App. 2d 596, 605-07, 326 P.2d 929 (1958). *Greenblatt* applied the irreparable injury exception to a failure

---

to obtain at least an initial decision of such disputes; the remedy is adequate and the harm is not irreparable.

29. Based on the above information let it be known to the court henceforth forever and eternity that we are not seeking review for a review would mean we were standing before an administrative body, and it is unconstitutional for an entity to investigate itself due to the overwhelming prejudices's involved and the unconstitutionality of such a review.

30. Second the Constitution does not provide for a review of a judicial matter to be delegated to the administrative branch of government or and the legislative branch of government, the separation of powers clause prohibits such.

31. We are not submitting to any body, and we are never appearing before any body.

32. We are presenting our claim as is our right before the judicial branch of government for the Republic state of California.

33. We are victims of the overbroad in overreaching actions of an administrative agency, when acting without authority delegated or otherwise and outside the bounds of the Constitution to violate our rights and rights of other citizens of the state of California.

   VI.    Exhaustion of ADMINISTRATIVE REMEDIES:

34. It has already been concluded that one need not exhaust administrative remedies in order to seek redress and affirmative relief/remedy at equity.

35. Since the agencies mentioned above act in a quasi-governmental capacity i.e. conducting commercial business while engaged in government business, they are prohibited by law from representing the sovereign.
   a. § 8146f [46 U.S.C.A. § 810]) provides that the *corporation shall* be chartered under the ... The *government* withheld such immunity... *When* the United States enters into *commercial business* it *abandons its sovereign capacity* and is to be *treated* like *any other corporation*. E.g. no immunity and removes the boundary preventing suit against the quasi sovereign.

The agency here concerned is a Delaware corporation. Nothing in section 2, supra, purports to change (if there were power so to do) the rights, duties, obligations, and liabilities of such a corporation. The Congress did not enact any statute incorporating the defendant or specifically providing for its incorporation. Its incorporation was under the laws of Delaware, and the Revised Code of Delaware of 1915 (chapter 65, § 1916) provides:

"`Sec. 2. Powers. — Every corporation created under the provisions of the chapter shall have power. * * * 2. To sue and be sued, complain and defend in any court of law or equity. * * * 8. To conduct business

in this state, other states, the District of Columbia, the territories and colonies of the United States and in foreign countries. * * *'

"If the sovereign thus chooses as its agent a state corporation which can be sued it cannot by ipse dixit deprive one injured by such an agent of the right to sue. The state of Delaware allowed defendant to be created, but as a condition of its creation and existence it afforded the right to any one to sue the corporate being which it thus created. It is alleged that, upon `the direction' of the President, defendant was incorporated. This is but another way of saying that the President directed that the necessary number of persons required under the Delaware statute should take the steps necessary under that statute to incorporate a defendant subject to the liabilities of that statute. Neither the Executive nor any person acting with authority under him had the power to change the Delaware statute, and hence no power to change the obligations, rights, or liabilities of a corporation which was the creature of the statute; i. e., the creature of the sovereign state of Delaware." 268 F. at page 584.

In Westbrook v. Director General of Railroads, supra, the railroads placed by law under the supervision of the United States were subject to the laws and to the same statutes as they had been formerly, except as modified by Congressional act. The court said: "The denial of the right to levy was a sufficient protection, if not the limit of Congressional authority as to suits against these corporations on their liabilities. But as applied to the governmental operation of the transportation systems every provision becomes a code. The first sentence, declaring that the carriers, while under federal control, shall be subject to all laws and liabilities as common carriers, state, federal, or at common law, created a liability on the part of the United States for every act and omission for which liability had formerly attached to the owners in their business as common carriers. The reserved right to alter these by orders of the President was a power to quickly withdraw this liability to any extent found to be needful. Thus Congress made the railroads' liabilities to patrons, employes, and the public arising under federal control to be `claims against the United States.'" 263 F. at

In Casper v. Regional Agricultural Credit Corp., supra, the defendant was a creature of the Reconstruction Finance Corporation pursuant to section 605b (e) of the act under which the Reconstruction Finance Corporation was organized. 15 U.S.C.A. §§ 601- 617. Under the authority granted to the Reconstruction Finance Corporation it created a defendant. The court said: "The inference that defendant is subject to suit is supported by the fact that its creator, the Reconstruction Finance Corporation, is itself subject to suit. The theory on which immunity is sustained is that the creator has transmitted to the creature its sovereign immunity. The government withheld such immunity from the Reconstruction Finance Corporation. It thus indicated a general policy of subjecting the Reconstruction Finance Corporation and its property to suit and judicial process. True, defendant derives its powers from the statute, but it is hardly to be inferred that immunity would be granted to the creature where it is withheld from the creator. The fact that defendant was created a corporation with all incidents of a corporation would seem to be decisive in the light of other considerations." 278 N.W. page 901.

It is interesting to note that Justice Peterson declined to follow the decision in Keifer Keifer v. Reconstruction Finance Corp., D.C., 22 F. Supp. 918, on the grounds stated above; and he was sustained by the Supreme Court in Keifer Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784.

In re Salas v. United States, supra, was a criminal action, the court discussed the status of the Panama Railroad Company, and said: "The government, however, continued the original corporate organization of the railroad company for its own purposes, among others to avoid the restrictions of certain laws of the United States applicable to the Commission. * * * When the United States enters into commercial business it abandons its sovereign capacity and is to be treated like any other corporation. Bank of United States v. Planters' Bank, 9 Wheat. 904, 6 L.Ed. 244. Although it absolutely owns the Panama Railroad Company and is the only person profiting or losing by its activities, still the railroad company sues and is sued just like any other corporation, in its own name. If this tobacco had been deficient in quality, the railroad company could have sued Salas to recover the damages, and if it had not been paid for Salas could have sued the railroad company for the price." 234 F. at page 844.

In Keifer Keifer v. Reconstruction Finance Corp., 1939, supra, it was stated in the opinion that the Reconstruction Finance Corporation was authorized to create regional agricultural credit corporations. The defendant was one of the regionals so created. "Regional, in due exercise of its powers, entered into so-called cattle-feeding contracts, whereby it undertook to provide sufficient feed and water for livestock with appropriate security for rendering these services. Failure through negligence to provide proper care for cattle delivered under this arrangement, with resulting damage to the livestock, is the basis of this suit brought by petitioner, plaintiff below, against Reconstruction and Regional." [ 306 U.S. 381, 59 S.Ct. 517, 83 L.Ed. 784.]

The court discussed whether the government had clothed Regional with immunity, and held that "Congress had a right to assume that the characteristic energies for corporate enterprise with which a few months previously it had endowed Reconstruction would now radiate through Reconstruction to Regional." 306 U.S. at page 394, 59 S.Ct. at page 520, 83 L.Ed. 784. The statute creating the Reconstruction Finance Corporation provided, among other powers, authority "to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal." 47 Stat. 5, 6, 15 U.S.C.A. § 604. The court held that to sustain the contention of the defendant, it would have been necessary for Congress to qualify the general power to sue and be sued. "In the light of these statutes it ought not to be assumed that when Congress consented `to suit' without qualification, the effect is the same as though it had written `in suits on contract, express or implied, in cases not sounding in tort.' No such distinction was made by Congress, and no such interpolation into statutes has been made in cases affecting government corporations incorporated under state law or that of the District of Columbia." 306 U.S. at page 396, 59 S.Ct. at page 521, 83 L.Ed. 784.

"The Reconstruction Finance Corporation is a corporate agency of the government, which is its sole stockholder. 47 Stat. 5, 15 U.S.C. [§] 601 et seq., 15 U.S.C.A. § 601 et seq. It is managed by a board of directors appointed by the President by and with the advice and consent of the Senate. The Corporation has wide powers and conducts financial operations on a vast scale. While it acts as a governmental agency in performing its functions (see Pittman v. Home Owners' Loan Corporation, 308 U.S. 21, 32, 33, 60 S.Ct. 15, 17, 18, 84 L.Ed. 11, 124 A.L.R. 1263), still its transactions are akin to those of private enterprises and the mere fact that it is an agency of the government does not extend to it the immunity of the sovereign. Sloan Shipyards [Corp.] v. United States [Shipping Board Emergency] Fleet Corporation, 258 U.S. 549, 566, 567, 42 S.Ct. 386, 388, 66 L.Ed. 762. Congress has expressly provided that the Reconstruction Finance Corporation shall have power `to sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal'. * * * We have had recent occasion to consider the status, in relation to suits, of a regional corporation chartered by the Reconstruction Finance Corporation and we have set forth the general principles which we think should govern in our approach to the particular question now presented. Keifer Keifer v. Reconstruction Finance Corporation, 306 U.S. 381, 59 S.Ct. 516, 517, 83 L.Ed. 784. In the Keifer case we did not find it necessary to trace to its origin the doctrine of the exceptional freedom of the United States from legal responsibility, but we observed that `because the doctrine gives the government a privileged position, it has been appropriately confined'. Hence, we declared that `the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work'. Id., 306 U.S. page 388, 59 S.Ct. page 517, 83 L.Ed. 784. Recognizing that Congress may endow a governmental corporation with the government's immunity, we found the question to be `Has it done so?' * * *

"Starting from the premise indicated in the Keifer case that waivers by Congress of governmental immunity from suit should be liberally construed in the case of federal instrumentalities — that being in line with the current disfavor of the doctrine of governmental immunity — we concluded that in the absence of a contrary showing `it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue and be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be'. Following that reasoning, the precise point of the decision was that the words `sue and be sued' normally embrace all civil process incident to the commencement or continuance of legal proceedings and hence embraced garnishment as part of that process."

The court reached the same conclusion in Federal Housing Administration v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724.

The distinction between governmental and proprietary capacity is well expressed in Chafor v. City of Long Beach, 174 Cal. 478, 163 P. 670, L.R.A. 1917E, 685, Ann. Cas. 1918D, 106.

The defendants rely upon a number of cases which they contend support their claims. In re Schillinger v. United States, 155 U.S. 163, 15 S.Ct. 85, 39 L.Ed. 108, the plaintiff contended that a government

contractor had, without permission, used plaintiff's patent device and the benefits inured to the United States.

In Russell v. United States, 182 U.S. 516, 21 S.Ct. 899, 45 L.Ed. 1210, the court held the Court of Claims had no jurisdiction in demands against the United States founded on tort.

Bigby v. United States, 188 U.S. 400, 23 S.Ct. 468, 47 L.Ed. 519, was a tort action against the United States for personal injuries alleged to have been received by plaintiff while entering an elevator placed by the United States in its Court House and Post Office Building in the City of Brooklyn. The court held a tort action could. not be maintained against the United States.

In Peabody v. United States, 231 U.S. 530, 34 S.Ct. 159, 58 L.Ed. 351, the court held that the government had not consented to be sued for torts even though committed by its officers in the discharge of their official duties.

In Danforth v. United States, 8 Cir., 102 F.2d 5, at page 8, the court said: "It is the settled rule that a sovereign state cannot be sued without its consent, and this is true whether the issue is raised by direct suit or otherwise. Nassau Smelting Refining Works v. United States, 266 U.S. 101, 107, 45 S.Ct. 25, 69 L.Ed. 190; Illinois Central R. Co. v. Public Utilities Comm., 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425; Davis v. O'Hara, 266 U.S. 314, 45 S.Ct. 104, 69 L.Ed. 303; Bigby v. United States, 188 U.S. 400, 401, 23 S.Ct. 468, 47 L.Ed 519; North Dakota-Montana W. G. Ass'n v. United States, 8 Cir., 66 F.2d 573, 92 A.L.R. 1484."

In re Transcontinental Western Air, Inc., v. Farley, 2 Cir., 71 F.2d 288, the court held the United States could not be made a party to a suit without its consent; further, that the operation and control of the mails is a government function. "By virtue of article 1, § 8, of the Constitution of the United States, Congress has been given power to make all laws which shall be necessary and proper for carrying into execution the powers resting in the national government to establish post offices and post roads and to control and operate the carrying of the mails. McCulloch v. Maryland, 4 Wheat. 316, 417, 4 L.Ed. 579. * * In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L.Ed. 1092." 71 F.2d at page 290. It will be noted that in all of the decisions in which the courts have held an agency or instrumentality of the government as liable, the agency or instrumentality of the United States government was carrying on a commercial business or enterprise, and also in each instance Congress had provided that the agency or instrumentality or corporation could sue or be sued.

In the one instance, in Keifer Keifer v. Reconstruction Finance Corp. and Regional Agricultural Credit Corp., supra, the particular corporation's charter did not contain the provision to sue or be sued, but the Supreme Court held that as the Reconstruction Finance Corporation, whose charter provided that it could sue and be sued, had created the Regional Agricultural Credit Corporation, that power was

transmitted to the Regional. It will be noted that the cases relied upon by the defendants are, in each instance, actions against the United States, and it is well established that the United States cannot be sued for a tort without its consent. In the present case, the plaintiff attempts to impose liability upon the Work Projects Administration and the Federal Works Administration for a tort. Under the provisions of the "Emergency Relief Appropriation Act of 1935" approved April 8, 1935, Public Resolution No. 11, 74th Congress, 15 U.S.C.A. §§ 721-728 note, the President of the United States of America on May 6, 1935, established the Works Progress Administration by Executive Order No. 7034; an Administrator in charge of the Works Progress Administration was appointed by and made responsible to the President of the United States of America; administrative units of the Works Progress Administration were created in each of the states, including California; work projects were carried on under the general supervision of local administrators and the Administrator in charge of all units; under the provisions of the "Reorganization Act of 1939," approved April 3, 1939, Public No. 19, 76th Congress, 1st session, 5 U.S.C.A. § 133 et seq., and Reorganization Plan No. 1 submitted to Congress by the President of the United States of America on April 25, 1939, approved June 7, 1939, C. 193, Sec. 1, 53 Stat. 813, 5 U.S.C.A. § 133s, the Works Progress Administration was placed under the Federal Works Agency and its name changed to the Work Projects Administration, and its functions were thenceforth and since carried out by and administered as the Work Projects Administration with a Commissioner of Work Projects at the head thereof acting under the direction and supervision of the Federal Works Administrator, and pursuant to the "Emergency Relief Appropriation Act of 1939" passed by resolution June 30, 1939, C. 252, 53 Stat. 927, 15 U.S.C.A. §§ 721-728, the functions theretofore vested in the Works Progress Administration were and are authorized thenceforth to be carried out by the Work Projects Administration.

Resolution No. 11, passed by the 74th Congress and approved April 8, 1935, and cited as "Emergency Relief Appropriation Act of 1935", 49 Stat. 115, ch. 48 opens with the sentence "That in order to provide relief, work relief and to increase employment by providing for useful projects, there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, to be used in the discretion and under the direction of the President, to be immediately available and to remain available until June 30, 1937, the sum of $4,000,000,000 * * *." Former appropriations are referred to for national industrial recovery, 48 Stat. 274, emergency relief and civil works, 48 Stat. 351, 48 Stat. 1055, and 48 Stat. 22, 16 U.S.C.A. § 585 et seq. The expenditure of the funds is left largely to the discretion of the President of the United States with certain directions.

Pursuant to the authority given by Congress under Resolution 11, supra, to the President, an Executive Order, No. 7034, was issued May 6, 1935, which provided:

"I hereby establish within the Government certain agencies and prescribe their respective functions and duties as follows:

"(C) A Works Progress Administration, which shall be responsible to the President for the honest, efficient, speedy, and coordinated execution of the work relief program as a whole, and for the execution of that program in such manner as to move from the relief rolls to work on such projects or in private employment the maximum number of persons in the shortest time possible."

Among the powers and duties vested in the W.P.A. were: (a) To assure that as many of the persons employed on all work projects as is feasible shall be persons receiving relief; and (b) to govern the selection of such persons for such employment.

The Order provides also that: "The Federal Emergency Relief Administrator shall serve also as Administrator of the Works Progress Administration." The concluding sentence of the President's Order is: "Provided, That so far as practicable the persons employed under the authority of this section shall be selected from those receiving relief."

Executive Order No. 7046, dated May 20, 1935, prescribing wages, hours of work, etc., provides: "(c) Preference in the employment of workers shall be given to persons from the public relief rolls, and except with the specific authorization of the Works Progress Administration at least 90 per cent of all persons working on a work project shall have been taken from the public relief rolls."

49 Stat. 1608, ch. 689, approved June 22, 1936, provided: "This title may be cited as the Emergency Relief Appropriation Act of 1936. To continue to provide relief, and work relief on useful projects, in the United States and its Territories and possessions (including projects heretofore approved for the Works Progress Administration which projects shall not be subject to the limitations hereinafter specified in this paragraph), $1,425,000,000, to be used in the discretion and under the direction of the President * * *", and after eliminating aliens illegally within the United States from employment rolls, provides: "and they shall make every reasonable effort consistent with prompt employment of the destitute unemployed to see that such aliens are not employed, and if employed and their status as such alien is disclosed they shall thereupon be discharged."

In the extensions given under the Emergency Relief Appropriation Acts of June 29, 1937, 50 Stat. 352, ch. 401, June 21, 1938, 52 Stat. 809, ch. 554, Feb. 4, 1939, 53 Stat. 507, June 30, 1939, 53 Stat. 927, and June 26, 1940, 54 Stat. 611, 15 U.S.C.A. §§ 721-728, (Works Progress Administration and the Works Projects Administration are authorized to be carried out until June 30, 1941 by the Works Projects Administration), the intention of Congress was clearly "to provide work for needy persons on useful public projects * * *."

The Act of June 30, 1939, 15 U.S.C.A. §§ 721-728, note, was in force when the accident occurred, to-wit: March 21, 1940. It provided: "Sec. 26. The Commissioner and the National Youth Administrator are

authorized to consider, ascertain, adjust, determine, and pay from the appropriation in section 1 or section 2 hereof any claim arising out of operations thereunder accruing after the effective date of this joint resolution on account of damage to or loss of privately owned property caused by the negligence of any employee of the Work Projects Administration or the National Youth Administration, as the case may be, while acting within the scope of his employment. No claim shall be considered hereunder which is in excess of $500, or which is not presented in writing within one year from the date of accrual thereof. Acceptance by a claimant of the amount allowed on account of his claim shall be deemed to be in full settlement thereof, and the action upon such claim so accepted by the claimant shall be conclusive."

There is no provision in any of the acts of Congress or in the Executive Orders of the President of the United States made pursuant to such Congressional authority, authorizing the defendants, Legg as Administrator for Work Projects Administration of Southern California, Commissioner of Work Projects, Washington, D.C. or Federal Works Administrator, to sue or be sued. Again the objects and purposes of the defendant government agencies are not commercial and are not in competition with citizens of the United States or any other persons or corporations. They are not organized for profit. They are engaged in relief. They are functioning as far from a commercial enterprise as it is possible to conceive and as nearly acting for the government in a governmental capacity as any agency can act. They are appointed by the President, act under rules prescribed by him at his direction. While there is no common law liability against the government for a tort, such immunity may be waived. In the act under discussion, Congress has limited the liability to privately owned property to $500 and provides the procedure. Congress intended clearly to limit the liability of the defendant government agencies.

The appropriations to carry on the work of the defendant government agencies is authorized under section 8, article 1 of the Constitution of the United States. While there is some dissent from this view, it seems difficult to so construe the general welfare clause to exclude relief to millions of our people who through no fault of their own have found themselves, because of a general breakdown in economic conditions, to be without employment and without food. Rok v. Legg, D.C., 27 F. Supp. 243.

In granting the motion of defendants Herbert C. Legg as Administrator for Work Projects Administration of Southern California, Commissioner of Work Projects, Washington, D.C. and Federal Works Administrator, only the defendant Robert Young Haynes remains, and as he and the plaintiffs are residents of the state of California, the action is dismissed as against defendant Haynes. Wylie v. State Board of Equalization, D.C. 21 F. Supp. 604; Dollar S.S. Lines v. Merz, 9 Cir., 68 F.2d 594; Goldstein v. Sommervell, 170 Misc. 602, 10 N.Y.S.2d 747; Nagle v. Wyoga Gas Oil Corp., D.C., 10 F. Supp. 905.

Carver v. Haynes, (s.d.cal. 1941), 37 F. Supp. 607, 610-14 (S.D. Cal. 1941)

36. Although the above referenced case was dismissed by the District Court with reference to certain parties, we cannot exclude the fact that the case law is clear that government cannot operate in commercial business, for the following sound reason:

37. Commercial business is a gamble, there are no certainties. That being the case the government has no authority as prescribed by any delegation of authority via the Constitution or otherwise to take chances with the people's money i.e. to gamble with the revenue.

38. You see for government to gamble with the revenue or monies of the people, the people would have to consent to such gambling, whereby we have the prohibition whenever the sovereign engages in commercial business it elects to abandon its representation of the people, its sovereign capacity and it chooses and elects to be sued by waiving its sovereign immunity to be treated as any other Corporation.

39. No one is saying that government can't be a corporation for we have the DC code section 1 – 101 through section 1 – 105 which highlights that the District of Columbia is the seat of government for the Corporation known as the United States, and the District of Columbia.

40. Yes government is a body politic, a municipal Corporation there to handle Municipal business, not commercial business, commercial transactions, trading on Wall Street, oh you did know, the state of California government agencies are treated on Wall Street, there traded on the stock market, everyone knows that trading in stocks is a gamble.

41. The judges who sit on the bench actually have portfolios whereby they trade in the market and in this particular court these judges and this court has investments and/or contracts quasi-or otherwise with the respondent Deutsche bank, creating a conflict of interest.

42. Their financial records will prove that this conflict of interest in both commercial business trading and/or transactions, stripping the court, it's officers, it's clerks of jurists, standing, and or dilatory authority to act as arms or agents for the sovereign.

43. Engagement in commercial business activities strips the sovereign of any clothing a protection, this roping government proving that the King has no clothes.

44. Nobody is saying that government can or cannot engage in transactions whereby they pay bills, whereby they pay their employees, whereby they take care of municipal business.

45. What we are saying is that government cannot be private, cannot be privately owned, at least not within the borders of the United States of America for it is illegal because government must be public, and must serve the public interest, and the general welfare of the whole and not the minority.

      VII.     On the issue of age of majority and capacity

46. This presentment serves as an affidavit being placed on the record whereby I Eeon am the owner of the birth certificate bearing my name (originally bearing no-name but since amended), and that I have attained the age of 18, and that I am the owner of that certificate. I am also aware that certificate is associated with a parcel number proving that it is also evidence of land property, the parcel number for my certificate is actually the same parcel number for the hospital or the land on which the hospital in which I was born is located.

47. Having attained the age of 18, and attained the age of majority I do hereby come before this body in my age of majority capacity unless someone can show cause as to why I should not be recognized in said capacity.

48. As being of the age of majority I do not submit to the jurisdiction of the court, shall not submit to the jurisdiction of the court, do not have to submit to the jurisdiction of the court unless someone can show cause as to why such as necessary and mandated, and obligation.

49. I do not consent to being before an administrative body. Although the Constitution allows for the administration of justice and the administration of government it does not allow for government to be an administration whereby it is a private Corporation.

50. There is no law against an administrative court, there is no law against the legislative court, however the right to petition for redress a government gives me the right to petition the judicial branch of government, exclusively. Government doesn't get to choose which branch I have access to, take a look at the principles of the separation of powers clause, the preamble, and the Constitution itself.

51. So any and all matters are perceived to be before the judicial branch of government unless someone can prove beyond any doubt that one does not have the right to be before the judicial branch of government upon demand.

52. The caption is to remain the same I shall we shall never consent to the changing and/or altering of our caption, whereby we are presenting ourselves to this body in our natural capacity as natural individuals.

> **Natural person**. ... In jurisprudence, a **natural person** is a **person** (in legal **meaning**. i.e., one who has its own legal personality) that is an **individual** human being, as opposed to a legal **person**, which may be a private (i.e., business entity or non-governmental organization) or public (i.e., government) organization.

53. And I object to the court rendering my name, name brand, and/or personality in the form of a non-individual, for I have officially tendered my resignation for registration agent for the agency, as is permissible in law.

We hereby present our claim demanding injunctive relief and placing notice upon this body as well as the other respondent/accused rights violators, as notice is mandatory at law. We bring forth our

claim of damages for treble the amount of the value of the property at par as of this day plus lawful fees for prosecuting this matter, and other expenses associated hereto.

Respectfully presented,

Competent Non-Attorneys for Petitioners and Plaintiffs

DECLARATION OF SERVICE BY MAIL

I, eeon, declare as follows:

I am a citizen of the State of California, am over the age of 18 years and am a party to the above-entitled action.  My business address is "**PMB: 18429 Veterans Memorial Drive E., Suite 8174, Bonney Lake Washington the Republic state nonmilitary zone without the United States**".

On May 22, 2017, a true copy of COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PETITION FOR WRIT OF ADMINISTRATIVE MANDATE IMMEDIATE STAY REQUESTED, RIGHT TO POSSESSION, NOTICE OF REMOVAL was placed in an envelope addressed to:

--- **Contact address on file** with the clerk of the court ---

which envelope, with postage thereon fully prepaid, was then sealed and deposited in a mailbox regularly maintained by the United States Postal Service in Monterey COUNTY, California.

I declare that the foregoing is accurate and that this declaration was executed this 22nd day of May, 2017, at Monterey, California.

_____

Eeon, a natural man

Concetta McBride, a natural person

///

///

///

///

Respectfully Presented,